Claude Eugene DENNIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–369.

Court of Criminal Appeals of Oklahoma.

Nov. 2, 1976.

G. Wendell Cathey, Durant, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Jr., Asst. Atty. Gen., Annis Kernan, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The appellant Claude Eugene Dennis, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Bryan County, Case No. CRF-75-16, of the crime of Murder in the Second Degree. Punishment was assessed by the trial court pursuant to 21 O.S. § 701.4 at a term of imprisonment in the State Penitentiary for not less then ten (10) years nor more than life. From said judgment and sentence the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: John Weder testified that on January 24, 1975, at approximately 5:00 p.m. he and some friends were on his ranch in Bryan County when they heard a shot. Investigating they found a body lying near the rear of a pickup truck. Weder related that the truck was parked approximately 20 yards east of a north-south section line, in between and a little east of two brush piles. To the west of the section line were other brush piles with the land gradually sloping up to the north and west to a creek. Beyond the creek was a bluff. From the bluff to the body was approximately 180 yards. In the general vicinity of the brush piles were two bulldozers. He further stated that he had seen coyotes in the area but no gray foxes. On cross-examination Weder testified that in his opinion if a hunter had been to the northwest shooting at the brush pile, he would not have seen the decedent.

Charlie Cates then testified that he also heard the shot and followed Weder to the scene where they found the decedent near the east rear wheel of the pickup lying on his back with his arms outstretched over his head. On cross-examination Cates stated that if one stood on the west side of the section line looking east he would first observe several brush piles and beyond that the pickup truck and two bulldozers.

Officer Doug Green of the Bryan County Sheriff's Department then testified that on the 24th when he arrived at the scene he took two Polaroid pictures, State's Exhibits No. 1 and No. 2, which fairly represented the condition of the decedent and the surrounding area. He further stated that the deceased was lying beside a pickup with his head in a southeasterly direction and that there was no evidence of a struggle at the scene.

Dr. Beryl McCann then testified that on the evening of the 24th at Bryan Memorial Hospital he pronounced Arthur Lake, the decedent, dead on arrival. Lake's body revealed a wound right below the mid-chest and to the left of the sternum. An autopsy was subsequently performed.

Dr. Larry Cartmill then testified that he was a pathologist and that on the 25th of January he performed an autopsy on the body. He stated that cause of death was a bullet wound to the chest, heart, left lung and liver. Several metal fragments were recovered from the body. It was the doctor's opinion that due to the ovoid nature of the entry wound it was very unlikely that it was caused by a ricocheted bullet.

The jury, judge, district attorney, defendant and defense counsel traveled to the

scene where Officer Green and John Weder again pointed out the location of the body and vehicles. After returning to the courtroom the district attorney testified that he picked up the bullet fragments from Dr. Cartmill and personally transported them to the OSBI lab in Oklahoma City and delivered them to Ray Lambert and Carl Cloud.

Bryan County Sheriff O. W. Highfill then testified that on February 7, 1975, he had occasion to take the defendant into custody. Prior to that date the defendant's wife had reported her husband missing stating that on the morning of January 24, 1975, he left home carrying a rifle. On the 7th of February Mrs. Dennis advised the sheriff that her husband had returned and was at her brother's home. Sheriff Highfill then went to the residence and took the defendant into custody for interrogation and seized his 6 mm. rifle, State's Exhibit No. 3. The rifle was subsequently delivered by Highfill to OSBI agent Mel Sires.

Sheriff Highfill further testified that on a later date the defendant, after being advised of his rights, stated that on the 24th he went to a nearby filling station to make a phone call and then cut across a pasture and shot a wolf, leaving it on a sandbar in a creek. Later that afternoon defendant noticed some fox tracks and followed them. Coming over a hill he saw two foxes playing in a brush pile approximately 125 yards away. Steadying his rifle on some sticks he shot at a fox but missed. He further told the sheriff he noticed two bulldozers near the brush pile but did not see a pickup or anyone around. After he fired the shot he heard a vehicle approaching.

On cross-examination the sheriff stated that he did not have a warrant for the defendant's arrest, that no charges had been filed, that the defendant made no statements admitting any shooting, and that he was in the sheriff's custody from 2:30 in the afternoon until 9:00 or 10:00 that evening. The rifle was subsequently admitted into evidence over objection of defense counsel.

Bryan County Deputy Sheriff C. D. Castleberry then testified that he saw the defendant on February 7 when they arrested him for investigation and took his rifle. On cross-examination Castelberry stated that the defendant offered no resistance at the time of his arrest and never admitted that he killed the decedent.

Agent Mel Sires then testified that he transported the rifle to the OSBI lab in Oklahoma City and turned it over to ballistics expert Carl Cloud.

Carl Cloud then testified that he was a firearms examiner for the OSBI and that he received the weapon on February 8, 1975, from Mel Sires and that he received some bullet fragments from the Bryan County District Attorney on January 28, 1975. He further stated that it was his opinion that the shell fragments were the remnants of a bullet fired from the 6 mm. weapon since the markings on the fragments matched the marks found on test bullets fired from the rifle.

OSBI Agent Earnest Lovett then testified that he first saw the defendant on February 7th in the Bryan County Sheriff's office. Later that day he and Stephens County Sheriff Kenneth Landis transported the defendant to Duncan, and he advised the defendant of his rights prior to their departure. During the trip to Duncan the defendant related that on the morning of the 24th he went to a service station to call his employer and advise that he would not be able to come to work because his automobile had been repossessed. He then proceeded cross-country to a canyon where he saw a coyote and shot the animal. He further related that his original intent that morning was to walk to his brother-in-law's home to persuade him to drive him to Oklahoma City to straighten out the repossession. While walking he spotted fox tracks and followed them. Coming upon a small ridge he no-

ticed two brush piles. From his vantage point he could see two foxes and beyond two bulldozers. He attempted to shoot a fox but missed. The defendant further stated that he saw no activity around the bulldozer and that he observed no other vehicles or any persons in the area. He then walked on hoping to get ahead of the fox and get another shot. That night he slept in a feeder shed. The next morning he walked to Madill where he spent the night in a freight depot. He continued to travel on foot the next few days until he reached a house he had previously owned near Elmore City in Stephens County where he took the vehicle of the present occupants and drove back to Bryan County. The defendant further related that he followed power lines and railroad tracks rather than main roads on his way to Stephens County in order to prevent people from seeing him and being alarmed by his carrying a rifle. On cross-examination Officer Lovett stated thaat after transporting the defendant to Duncan he obtained another statement which was tape recorded at approximately 4:00 on the morning of the 8th and subsequently obtained a third statement given at approximately 10:50 a. m. the next morning. The witness stated that all three statements contained basically the same information.

Stephens County Sheriff Kenneth Landis then testified that on the 7th he accompanied the defendant and Earnest Lovett to Duncan and that the defendant was advised of his rights prior to their leaving Bryan County and on two subsequent occasions. The sheriff then recounted events as told him by the defendant which were substantially the same as repeated by Officer Lovett. On cross-examination Sheriff Landis stated that he took one statement in his own handwriting which the defendant read and signed. The statement was admitted into evidence. The state and the defense then both rested.

The charge submitted to the jury under Instruction 1 reads as follows:

In this case the State of Oklahoma is prosecuting the defendant, Claude Eugene Dennis, for the crime of Murder in the Second Degree, by Information, wherein it is alleged that in Bryan County, State of Oklahoma, on or about the 24th day of January, 1975, the said defendant, in the County and State aforesaid and on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully, commit the crime of Murder in the Second Degree, in the manner and form as follows: to-wit:

That is to say, the defendant did in said County and State, at the date above named unlawfully, wrongfully, knowingly, wilfully and feloniously, without authority of law, but with premeditation, did then and there kill and effect the death of one Arthur Lake, Jr. by means of a firearm loaded with powder and shot, held in the hand of the said CLAUDE EUGENE DENNIS and which he pointed at, fired and shot the said Arthur Lake, Jr., said shot causing mortal wounds in the body of the said Arthur Lake, Jr. and of which mortal wounds the said Arthur Lake, Jr., did languish and die; said act of the said Claude Eugene Dennis being eminently dangerous to others and evidencing a depraved mind, regardless of human life, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma.

Murder in the second degree is defined by 21 O.S. § 701.2 as follows:

Murder in the second degree.—Homicide is murder in the second degree in the following cases:

1. When perpetrated without authority of law, and with a premeditated design to effect the death of a person, or of any other human being, but by an act not enumerated in the preceding section;

2. When perpetrated by an act imminently dangerous to others and evincing

a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual; or

3. When perpetrated without any design to effect death by a person engaged in the commission of any felony other than the felonious acts set out in Section 1 of this act.

■ From an examination of the above it is apparent that the charge submitted to the jury included the first two paragraphs of § 701.2. However, the evidence presented at trial failed to prove directly or circumstantially that the defendant perpetrated the act while in a depraved state of mind. As stated in *Carter v. State*, Okl.Cr., 507 P.2d 932, the trial court must instruct on those issues raised and having some basis of support in the evidence. Since no evidence was presented concerning a depraved mind the charge submitted and elaborated upon through Instruction 4 could only tend to confuse the jury.

Instruction 12 which reads as follows:

You are instructed that if you find and believe from the evidence, beyond a reasonable doubt, that the defendant killed the deceased and that the killing was unlawful, and not justifiable, or excusable homicide, as those degrees of homicide are defined to you in these instructions, but you have a reasonable doubt as to whether the defendant is guilty of murder, as that degree of homicide is defined to you, then you should next consider whether the defendant is guilty of Manslaughter in the First Degree, which is a lesser degree of homicide, and which is included in, and may be considered under the Information charging murder.

infers that the trial court intended to instruct on excusable homicide. However, the record reveals that no instruction on excusable homicide was submitted to the jury. This Court has held on numerous occasions that the trial court is bound to give instructions on those issues of law which have a bearing on the case and that the defendant has a right to have clear and affirmative instructions given to the jury which are applicable to his defense. *Parrott v. State*, Okl.Cr., 522 P.2d 628, and *Woods v. State*, Okl.Cr., 485 P.2d 486. Excusable homicide is defined by 21 O.S. § 731 as including a homicide committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent. The evidence presented at trial is consistent with the defense theory of a tragic hunting accident and the trial court committed fundamental error in failing to instruct on excusable homicide.

The record further reveals that the trial court submitted an instruction on manslaughter in the first degree. Manslaughter in the first degree is defined by 21 O.S. § 711 as follows:

Manslaughter in the first degree defined.—Homicide is manslaughter in the first degree in the following cases:

1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.

■ The evidence presented at trial is not consistent with the theory that the homicide was committed by a person engaged in the commission of a misdemeanor or by a person in a heat of passion or by a person resisting the commission of a crime. Therefore the trial court abused its sound judicial discretion in submitting the in-

struction on manslaughter in the first degree in the instant case.

■ The record further reveals that defense counsel submitted a requested instruction on manslaughter in the second degree. Manslaughter in the second degree is defined by 21 O.S. § 716 as follows:

> Manslaughter in the second degree.— Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree.

The evidence presented at trial tends to establish culpable negligence on behalf of the defendant. Therefore the trial court erred in refusing to submit the requested instruction to the jury.

■ The defendant in his third assignment of error contends that the trial court committed reversible error in denying an in camera hearing to determine the admissibility of certain evidence. The transcript of the trial proceedings indicates that the trial court refused to allow an in camera hearing although there was grave doubt as to the lawfulness of the arrest of the defendant and the subsequent seizure of his rifle. It is therefore our opinion that the trial court abused its discretion in refusing to allow an in camera hearing at which time all evidence in support of the defendant's motion to suppress could have been heard.

■ It should also be noted that the defendant's brief further urges that the trial court committed error in admitting into evidence two pictures of the body of the deceased taken at the scene of the crime for the reason that their introduction was designed primarily to arouse the passion of the jury due to the gruesome nature of the photographs. However, this Court has examined the photographs and finds that they are not gruesome and were not taken after an autopsy had been performed.

They merely showed the point of entry of the bullet. Therefore the photographs are admissible. See *Cottrell v. State*, Okl.Cr., 458 P.2d 328.

For the reasons set out above it is our opinion that this cause must be REVERSED and REMANDED for new trial consistent with the terms and tenor of this opinion. If requested, a full evidentiary hearing on the defendant's motion to suppress should be held.

BRETT, P. J., and BUSSEY, J., concur.