2002 OK CR 5

### Christopher David GUEST, Appellant,

v.

### STATE of Oklahoma, Appellee.

### No. F–2001–260.

Court of Criminal Appeals of Oklahoma.

Feb. 5, 2002.

Timothy Daniel, Drumright, OK, Attorney for Appellant.

Michael S. Loeffler, Sapulpa, OK, Attorney for the State.

Timothy Wallen Daniel, Drumright, OK, Attorney for Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, Kellye Bates, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee.

## SUMMARY OPINION

STRUBHAR, Judge:

¶ 1 Appellant, Christopher David Guest, was convicted of two counts of First Degree Manslaughter in the District Court of Creek County, in Case Number CF–99–55–D, following a jury trial before the Honorable Joe Sam Vassar. Following its return of a guilty verdict, the jury recommended that Appellant be sentenced to serve a term of ten years imprisonment on each count. The trial court sentenced Appellant accordingly, ordering the sentences be served consecutively.

¶ 2 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, and briefs of the parties, we affirm. In reaching our decision, we considered the following propositions of error and determined neither reversal nor modification to be required under the law and the evidence:

I. Appellant's Fourth Amendment rights were violated when his blood was taken without his consent and the results of the blood test were used against him at trial.

II. Appellant's right to Due Process was violated when the trial court denied an in camera hearing to determine the admissibility of certain evidence.

III. Appellant was deprived of his constitutional right to a fair trial by the admission of prejudicial photographs that were presented to the jury during trial.

IV. The accumulation of errors in this case so infected the trial with unfairness that Appellant was denied Due Process.

¶ 3 In reaching our conclusion that relief is not warranted, we find in Proposition II that under the facts of this case, where there was no grave doubt as to whether the evidence was seized in a lawful manner, Appellant did not have a constitutional right to an *in camera* hearing on his Motion to Suppress. *See Dennis v. State,* 1976 OK CR 266, ¶ 23, 556 P.2d 617, 622. We find in Proposition III that the trial court did not err in admitting the photographs into evidence. *See Welch v.*

*State,* 2000 OK CR 8, ¶ 31, 2 P.3d 356, 371, *cert. denied,* 531 U.S. 1056, 121 S.Ct. 665, 148 L.Ed.2d 567. Finally, we find in Proposition IV that the accumulation of error does not require relief in this case. *See Black v. State,* 2001 OK CR 5, ¶ 98, 21 P.3d 1047, 1078, *cert. denied,* —— U.S. ——, 122 S.Ct. 483, 151 L.Ed.2d 396.

¶ 4 The issue raised in Proposition I requires more discussion. Appellant complains in his first proposition that because he was not under arrest at the time that his blood was withdrawn and he had not consented to the taking of his blood for testing, the blood was taken in violation of Oklahoma statutes and his Fourth Amendment right to be free from unreasonable searches and seizures. Appellant argues specifically that Oklahoma statutes require a person be placed under arrest before his or her blood can be taken for testing.

¶ 5 There are two statutes that address circumstances under which persons driving upon public roads and highways in Oklahoma may be required to submit to blood and breath tests to check for intoxicating substances. Title 47 O.S.Supp.1998, § 751(A) provides that any person is deemed to have given consent to blood or breath tests if such person is "arrested for any offense arising out of acts alleged to have been committed while the person was operating or in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place while under the influence of alcohol or other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance." More narrowly drafted, 47 O.S.Supp.1998, § 10–104(B) provides that, "[a]ny driver of any vehicle involved in an accident who could be cited for any traffic offense where said accident resulted in the immediate death of any person shall submit to drug and alcohol testing as soon as practicable after such accident occurs."

¶ 6 This Court and the Oklahoma Supreme Court have held that the specific language of section 751 requires an officer to place a driver under arrest before requesting him or her to submit to a blood alcohol test. *See State v. Shepherd,* 1992 OK CR 69, ¶ 3, 840 P.2d 644, 645. *See also Smith v. State ex rel.*

*Dept. of Public Safety,* 1984 OK 16, ¶ 3, 680 P.2d 365. There is no such language found in section 10–104(B). However, this section does state that the traffic violation shall constitute probable cause for purposes of 47 O.S.Supp.1998, § 752 and that the procedures found in section 752 shall be followed. Appellant argues that section 752(B) requires a person be placed under arrest before their blood is withdrawn.

¶ 7 A full reading of section 752(B) does not support Appellant's argument. Section 752 generally addresses the administration of tests, authorization, liability for performance of tests, and reports. Section 752(B) specifically provides:

If the person authorized to withdraw blood as specified in subsection A of this section is presented with a written statement:

1. Authorizing blood withdrawal signed by the person whose blood is to be withdrawn;

2. Signed by a duly authorized peace officer that the person whose blood is to be withdrawn has agreed to the withdrawal of blood;

3. Signed by a duly authorized peace officer that the person whose blood is to be withdrawn has been placed under arrest and that the officer has probable cause to believe that the person, while intoxicated, has operated a motor vehicle in such manner as to have caused the death or serious physical injury of another person; or

4. In the form of an order from a district court that blood be withdrawn, the person authorized to withdraw the blood, and the hospital or other health care facility where the withdrawal occurs may rely on such a statement or order as evidence that the person has consented to or has been required to submit to the clinical procedure and shall not require the person to sign any additional consent or waiver form. *In such a case, the person authorized to perform the procedure, the employer of such person, and the hospital or other health care facility shall not be liable in any action alleging lack of consent or lack of informed consent.*

(Emphasis added). In short, this section does not require that a person be placed under arrest before his or her blood can be withdrawn for drug or alcohol testing. Rather, it simply sets forth four circumstances under which the persons who withdraw the blood cannot be held civilly liable for the withdrawal of blood.

¶ 8 Oklahoma statutes 47 O.S.Supp.1998, § 10–104(B) and 47 O.S.Supp.1998, § 751 provide the circumstances under which blood can be withdrawn from a driver in Oklahoma. Section 10–104(B) is applied to all drivers involved in fatality accidents and section 751 applies to all other offenses arising out of acts committed while the driver was operating a vehicle on public roads. In the present case, under section 10–104(B), it is enough that Appellant was the driver of a vehicle involved in an accident, that he could be cited for a traffic offense and that the accident resulted in the immediate death of a person. Appellant's blood was neither withdrawn in violation of Oklahoma statutes nor in violation of his constitutional rights under the Fourth Amendment. This proposition warrants no relief.

## DECISION

¶ 9 The Judgment and Sentence of the trial court is **AFFIRMED.**

LUMPKIN, P.J., and JOHNSON, V.P.J., and LILE, J., concur.

CHAPEL, J., dissent.

CHAPEL, Judge, Dissenting:

¶ 1 I respectfully dissent. I agree with the majority that through 47 Okl. St. Ann. § 10–104(B), Oklahoma law mandates that a driver who could be cited for any fatality-related traffic offense submit to drug and alcohol testing as soon as practicable after the accident. I also agree that under § 10–104(B), a traffic violation establishes probable cause for the purpose of testing, and that "the procedures found in § 752 *shall* be followed" to determine the presence of alcohol or controlled dangerous substances within the driv-

er's blood system.[1] I part company with the majority, however, when it determines that the irrefutably directive language of § 10–104 highlighted above does not really require compliance with the blood withdrawal procedures listed in § 752, and that § 752 is merely a statement of how blood withdrawers can avoid civil liability.

¶ 2 Section 752 has ten subsections (A J). Sub-section B has four subparts (1–4). Section 752(B)(4) states that if a person statutorily authorized to withdraw blood is presented with a statement "[i]n the form of an order from a district court that blood be withdrawn," then

[that person] and the hospital or other health care facility where the withdrawal occurs may rely on such a statement or order as evidence that the [patient] has consented to or has been required to submit to the clinical procedure and shall not require the [patient] to sign any additional consent or waiver form. In such a case, the person authorized to perform the procedure, the employer of such person, and the hospital or other health care facility shall not be liable in any action alleging lack of consent or lack of informed consent.

47 Okl. St. Ann. § 752(B)(4).

¶ 3 The last sentence of § 752(B)(4) limits individual and institutional civil liability for an action premised on the patient's alleged lack of consent to the blood withdrawal under one circumstance: where the withdrawal was premised upon a written judicial order. Seeking to uphold the legality of the blood test in this case, the majority extracted that one sentence from subsection B(4) and washed it over the entire statute to justify its result stating that § 752(B) "simply sets forth four circumstances under which the persons who withdraw blood cannot be held civilly liable" for their acts.[2] The majority misreads the statute. Section 752(B), which deals with actual or substituted consent, does far more than that.

¶ 4 First, if the limitation of liability was intended to cover all four methods by which

1. Majority Opinion at 290 (emphasis added).

2. Majority Opinion at 291.

blood withdrawal was authorized, it would not have been embedded solely within the text of subsection (B)(4)—the lone provision discussing a judicial order. Second, reading the limitation of liability in § 752(B)(4) into §§ 752(B)(1)-(3) as well renders § 752(C) (a broader limitation that *specifically* covers all four methods[3]) superfluous. While I suppose it is possible that the legislature stated the limitation twice to assure the health care industry that it could not be held civilly liable, I believe that the legislature had something more in mind when it enacted § 752(B) and demanded its compliance in § 10–104(B): a requirement that law enforcement comply with its provisions. Thus, blood should not be withdrawn under § 752(B) unless the withdrawing entity acts only after being presented with a proper written statement, including, *inter alia,* a judicial order.[4] Further, evidence from blood that is improperly drawn should be inadmissible.

¶ 5 Section 10–104(B) plainly states that "the procedures found in Section 752[ ] **shall** be followed" when obtaining a blood sample. The legislature's intent was to require the State to obtain a blood sample and in one of the four enumerated ways. Thus, law enforcement must either have the consent of the "patient," an effectuated arrest based upon probable cause that the person caused death while operating a motor vehicle under the influence, or a judicial order.[5] The record reflects that law enforcement failed to comply.

¶ 6 At the request of Trooper Sosbee, a nurse drew Guest's blood approximately one hour after the fatal accident. Trooper Sosbee testified that he neither arrested Guest nor obtained his consent before the blood draw. There is no evidence that any judicial order directed the action. Moreover, the State's brief effectively concedes that the statutory requirements were not followed. As a result, the blood evidence should have been suppressed.

¶ 7 With the blood evidence suppressed, not much evidence exists that Guest was under the influence of a controlled substance at the time of the accident. The blood evidence indicated that methamphetamine was present in Guest's blood about an hour after the accident. Although the forensic chemist testified to the general effects of methamphetamine, including its potential effect on a person for a couple of days, he did not quantify the amount. As a result, the chemist could not testify to whether and/or how much this particular defendant, Guest, was affected by the methamphetamine. Guest testified that he had ingested a quarter gram of methamphetamine approximately 48 hours before the accident. However, he also testified that he was not under the influence when the accident occurred, and that the accident was caused because he fell asleep. Had the motion to suppress been granted, Guest undoubtedly would not have testified at all, leaving the State with no evidence of intoxication.

¶ 8 The blood evidence was crucial to the State's manslaughter conviction. Without it, assuming Guest had testified, it would have been left with only a negligent homicide case supported, if at all, by mere guesswork as to

---

**3.** Section 752(C) states: No person specified is subsection A of this section, no employer of such person, and no hospital or other health care facility where blood is withdrawn shall incur any civil or criminal liability as a result of the proper withdrawal of blood when acting at the request of a law enforcement officer by the provisions of Section 741 or 753 of this title, or when acting in reliance upon a signed statement or court order as provided in this section, if the act is performed in a reasonable manner according to generally accepted clinical practice. No person specified in subsection A of this section shall incur any civil or criminal liability as a result of the proper collection of breath, saliva, or urine when acting at the request of a law enforcement officer under the provisions of Section 751 or

753 of this title or when acting pursuant to a court order.

**4.** I also note that the majority's opinion causes me to question the constitutionality of § 10–104. As interpreted by the majority, § 10–104 becomes a legislative mandate to obtain a blood sample from the driver of a vehicle who could be cited for a traffic offense involved in a fatality accident without any restrictions, such as consent or an arrest, on how the officers obtain blood from the individual. I believe that similar legislative concerns prompted the requirement that the blood sample be obtained in accordance with § 752.

**5.** 21 O.S. § 752.

the effect of a ¼ gram of methamphetamine on Guest forty-eight hours post-ingestion. As a result, this Court should reverse and remand for a new trial or modify the judgments and sentences to negligent homicide.