Michael Joe SARTIN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-78-183.

Court of Criminal Appeals of Oklahoma.

Aug. 18, 1980.

Burke Mordy, Mordy & Clark, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Timothy S. Frets, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

The appellant was convicted of the crime of Manslaughter in the First Degree in the District Court of Marshall County, Case No. CRF-77-02. Punishment was set at ten (10) years in the State penitentiary.

On April 29, 1980, this Court promulgated an opinion in the above styled and numbered cause reversing and remanding the case for a new trial. Subsequently, the State timely filed its petition for rehearing. Pursuant to an order of this Court dated May 20, 1980, the appellant was ordered to file a response brief to the petition for rehearing.

All briefs having now been filed and carefully considered by this Court, we are of the opinion that the result reached in the first opinion is correct. The prior opinion of this Court dated April 29, 1980, is hereby ordered withdrawn from publication and the motion for oral argument is denied.

The record reflects that the appellant crossed the center lane while driving on Highway 70 on August 23, 1976, resulting in a head–on collision with a pickup truck in which the deceased, Maurice Milton Carter, was a passenger. Although he sustained personal injuries, the appellant exhibited a glassy stare at the time of the accident but appeared to be in no pain. Several witnesses, including an emergency room physician, attributed this condition to drug intoxication.

I

The appellant first argues that the testimony of State's witness, Dr. Wade Warren, as to the results of a chemical analysis report represented inadmissible hearsay. The State responds by asserting that if hearsay was involved the appellant invited the error and has now waived his right to complain, citing *Henson v. State*, Okl.Cr., 551 P.2d 1152 (1976).

Both parties fail to argue the law applicable to the factual situation before us. Admissibility of the results of a chemical analysis report previously has been considered by this Court and is not a hearsay question.

Here, the blood test was taken by a doctor at a highway patrolman's request, pursuant to 47 O.S.Supp.1975, § 751, et seq., known as the "implied consent" statute. At trial, the defense counsel inquired of the emergency room physician whether a blood sample was taken from the appellant. The doctor replied affirmatively. Then on redirect examination, over objection by the appellant, the State was allowed to question this doctor as to the results of the test. The doctor stated, "The report I saw indicated there were drugs in the blood present."

In *State v. Wood*, Okl.Cr., 576 P.2d 1181 (1978), we held that the implied consent statute means that a person driving upon the public roads gives his implied consent to a blood test in the event he is rendered unconscious as a result of an automobile collision and the police have probable cause to believe he was driving while intoxicated. We further held therein that an individual must be given the opportunity, when he regains consciousness, to revoke his consent, in which case the blood test and its results would not be admissible.

Guidelines to be followed in all future cases having the same pertinent facts were established in *State v. Wood*, supra:

" . . . (1) [O]fficers attempting to take blood or breath from an unconscious defendant must have probable cause to search, as required in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and as required by 47

O.S.Supp.1975, § 751; (2) the person sought to be tested must be unconscious, or so near thereto as to be incapable of consent; (3) when the person regains consciousness, at some opportune time, he must be given an opportunity to revoke his consent to the taking of the blood test. This can be done at trial, preliminary, or prior to any hearing. However, the decision, once made, is binding. Thus, where the crime charged is a felony the decision would have to be made at preliminary hearing or prior thereto; (4) it is not necessary that the State provide defendant with the results of the test prior to his decision; (5) if the defendant has already been charged at the time he is asked to make his decision he is entitled to the assistance of counsel."

Before considering the present case in the context of *State v. Wood*, supra, we feel compelled to point out that, while the guidelines set forth therein are still viable, the reasoning in that case is misplaced. The case of *Bailey v. City of Tulsa*, Okl.Cr., 491 P.2d 316 (1971), relied on in *Wood*, and the discussion on self–incrimination was effectively overruled in *State v. Thomason*, Okl.Cr., 538 P.2d 1080 (1975).

■ *Thomason* held that the particular phraseology contained within Art. II, § 21, of the Oklahoma Constitution, dealing with self–incrimination, is simply declaratory of the common law and not a grant of broader protection than that embodied within the Fifth Amendment of the United States Constitution. The case overruled authorities to the contrary[1] and went on to hold:

"... We have already recognized that the origin and history of the privilege in common law prohibited testimonial compulsion but did not preclude that compulsion making the suspect or accused the source of real or physical evidence. ..." (Citations omitted)

Therefore, because a blood test is physical evidence rather than testimonial, a defendant's consent or lack thereof is not within the purview of Art. II, § 21, Oklahoma Constitution, or the Fifth Amendment of the United States Constitution. Rather, as indicated in the guidelines to *Wood v. State*, supra, the removal of a blood sample is to be considered in a Fourth Amendment context. And as stated in *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 1826 (1966), "But if compulsory administration of a blood test does not implicate the Fifth Amendment, it plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment."

We now turn to the facts before us. Both a witness at the scene, who had considerable first aid training and experience with drug cases involving soldiers in Viet Nam, and a highway patrolman testified that they had observed what appeared to be drug intoxication in the appellant. The emergency room doctor testified that the appellant appeared to be in a "euphoretic condition" and, in his opinion, was not in shock. It was the doctor's impression that the appellant was under the influence of some type of drug. Under these circumstances, we think it clear that there was probable cause to take blood from the appellant under *Schmerber v. California*, supra, and under 47 O.S.Supp.1975, § 751.[2]

■ But the record before us is silent concerning whether the appellant consented to the blood test. This court cannot assume

---

1. Such cases include, for example, *Bailey v. City of Tulsa*, Okl.Cr., 491 P.2d 316 (1971); *Lorenz v. State*, Okl.Cr., 406 P.2d 278 (1965); *Spencer v. State*, Okl.Cr., 404 P.2d 46 (1965); *Cox v. State*, Okl.Cr., 395 P.2d 954 (1964).

2. Title 47 O.S.Supp.1975, § 751, provides:
   "Any person who operates a motor vehicle upon the public highways, streets or turnpikes of this state shall be deemed to have given consent subject to the provisions of this act to a chemical test or tests of his blood or breath, at the election of the person proposed to be tested, for the purpose of determining the alcoholic content of his blood. The test or tests shall be administered at the direction of a law enforcement officer after having arrested a person and having reasonable grounds to believe the person driving or in actual physical control of a motor vehicle upon the public highways, streets or turnpikes was under the influence of alcohol or intoxicating liquor."

that silence indicates consent. Under the implied consent statute, a conscious person has the right to refuse to submit to the test, and equal protection requires that an unconscious person be afforded the same right of refusal as that given a conscious person. We hold that the trial court erred in admitting evidence of the blood test and its results.

## II

While the admissibility of the results of the blood test under the circumstances here would be a sufficient ground for reversal and remand for a new trial, there was other evidence introduced which was of suspect relevance. This concerns the trial court's permitting the prosecution to question two witnesses regarding the details of another crime: namely, unauthorized possession of a narcotic drug. The testimony to which the appellant objects relates to the discovery of a half empty syringe on the appellant's person five and one–half hours after the accident and statements allegedly made by the appellant at the Ardmore hospital that he was a drug user and that 50 mgs. of Demerol would not be sufficient to kill the pain, that he would need at least 200 mgs.

A nurse testified that on the evening of the accident she observed a nursing assistant retrieve a syringe containing yellow fluid from the inside of the appellant's underpants. The syringe was discovered next to the catheter which had been inserted in the appellant after surgery. The nurse stated that after retrieval of the syringe the appellant was much calmer and not complaining of pain. Although the syringe was turned over to the police, the contents were never identified at trial. The time and manner of discovery seem to indicate that the syringe was not in the possession of the appellant at the time of the accident or at the time of the insertion of the catheter.

■ It is well settled that when a person is put on trial he is to be convicted by evidence which shows him guilty of the offense charged, and proof that he is guilty of other offenses not connected to the offense for which he is on trial must be excluded unless it comes within one of the five generally recognized exceptions. *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977). It does not appear from the record that the evidence complained of falls within any of these exceptions.

In its brief on rehearing, the State attempts to justify the admissibility of this evidence as proper rebuttal testimony, citing *Burney v. State*, Okl.Cr., 594 P.2d 1226 (1979).[3] The State argues that this evidence was proper rebuttal evidence to contradict the appellant's previous testimony, denying he made the statement that he was a drug user and denying that a syringe was found in his possession. A reading of the appellant's testimony, however, shows no such denial. Questions in this regard were propounded by the State, but each time defense counsel objected and moved for a mistrial. The appellant never answered the question. Therefore, the State's reliance on *Burney* is misplaced.

■ Admissibility of the nurse's testimony regarding the appellant's possession of the syringe was clearly error. The issue is the appellant's condition at the time of the accident, not five and one–half hours later; and the syringe is more prejudicial than it is probative of that issue.

■ Admittedly, the admissibility of the appellant's statement that he needed 200 mgs. of Demerol is a closer question. Testimony by witnesses at the scene of the accident attributing the appellant's condition to drug intoxication rather than to shock, coupled with the appellant's statement that he was a drug user, could render the statement admissible.

3. *Burney v. State*, Okl.Cr., 594 P.2d 1226 (1979), sets forth the well recognized rule that "rebuttal evidence may be offered to contradict, repel, disapprove, or destroy facts given in evidence by an adverse party in that the admis-

sion of such evidence is a matter addressed to the discretion of the trial court whose ruling will not be reversed absent a showing of a manifest abuse of discretion. ..." (Citations omitted) 594 P.2d at 1229.

For the above and foregoing reasons, the judgment and sentence is *REVERSED* and *REMANDED* for a new trial not inconsistent with the views expressed herein.

BRETT, J., concurs.

BUSSEY, J., concurs in results.

BUSSEY, Judge, concurring in results:

While I concur in the result, I must respectfully express my disagreement with part of the majority's reasoning. I would not require that the prosecution take on the burden, as part of its case–in–chief, of affirmatively showing in the record the consent of a conscious motorist who did in fact submit to having blood samples drawn from his body in accordance with the Implied Consent Act.

Prior affirmatively manifested consent is not required by the constitution, where the arresting officer has probable cause. See *Schmerber*, supra. Therefore, no constitutional right is protected by the legislative requirement that no samples be drawn where it would be done without the consent of the motorist. Rather, this requirement would protect against a potentially dangerous physical confrontation between law enforcement and medical personnel, and a motorist believed to be intoxicated; possibly the legislature also seeks to spare one the indignity of a physical intrusion into his body without a warrant and despite his objection. In my opinion, these purposes are not served by mandating in the Implied Consent area the kind of requirements imposed in situations with constitutional overtones.

The majority's rationale extended only slightly would require the giving of Miranda–type warnings to require that the "consent" and submission to the samples being drawn is voluntary: For instance, advise arrestee that 1) he has a right to a contemporaneously drawn blood sample for testing by a physician or other qualified person of his own choosing (47 O.S.Supp.1975 § 752); 2) that if motorist refuses, no test will be given (47 O.S.Supp.1975 § 753), although 3) his privilege to drive may then be lost (47 O.S.Supp.1975 § 754); 4) that any test will be of blood or breath, at motorist's option (47 O.S.Supp.1975 § 751).

Moreover, the quality of any such affirmative consent would always be subject to challenge, since the prosecution must concede that reasonable grounds existed for believing arrestee was intoxicated at the time consent was given, intoxication also presumably established by the test results.

The implied consent situation is unique in many respects, and I do not believe that the majority reasoning on this point furthers the proper functioning of the statute.