**STATE of Oklahoma, Appellant,**

v.

**Robert Eugene SHEPHERD, Appellee.**

No. S–88–631.

Court of Criminal Appeals of Oklahoma.

Oct. 23, 1992.

Robert A. Macy, Dist. Atty., Dist. No. 7, Larry A. Jones, Asst. Dist. Atty., Oklahoma City, Okl., for appellant.

Jo–Ann Askins, Oklahoma City, Okl., for appellee.

## OPINION

BRETT, Judge:

Robert Eugene Shepherd, appellee, was tried by a judge for the crime of Manslaughter in the First Degree, in violation of 21 O.S.1981, § 711(1), in Case No. CRF–87–6060, in the District Court of Oklahoma County. The trial court sustained the appellee's motion to suppress blood test re-sults and also sustained his demurrer to the evidence. The State now appeals this decision on reserved questions of law pursuant to 22 O.S.1981, § 1053.

On April 27, 1987, the appellee was allegedly driving an automobile which was involved in a fatality accident. The appellee was taken to the hospital where he was in a semi-conscious state when approached by the investigating officer. Upon detecting a strong odor of alcohol about the appellee, the officer instructed a nurse to draw blood from him for a blood alcohol test. The State stipulated that this blood was taken without the consent of the appellee and that no evidence indicated that he was given the opportunity to revoke any implied consent when he regained consciousness.

■ The first reserved question of law that we will address is how and when an officer may effectuate an arrest of an unconscious individual so that his blood can be taken in accordance with the mandates of the implied consent statutes 47 O.S.1981, §§ 751–753. In order to request a driver to submit to a blood alcohol test, it is well established that an officer must first place the driver under arrest. *See Smith v. State ex rel. Dept. of Public Safety*, 680 P.2d 365 (Okl.1984). Such arrest must be made in compliance with 22 O.S.1981, § 190, which requires that, "[a]n arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer" (emphasis added). This Court has held that this provision requires an officer to actually restrain an individual's freedom of movement or attempt to take an individual into custody. *Holbird v. State*, 650 P.2d 66, 70 (Okl.Cr. 1982). It has also found that where there is no resistance or manual seizure, "[t]here must be an intent to arrest by the officer and an understanding by the arrestee that submission is necessary." *DeVooght v. State*, 722 P.2d 705, 708 (Okl.Cr.1986).

No exception to this general rule has been created for cases in which an individual is unconscious when he is to be placed under arrest. We agree with the State that it would obviously be futile to verbally inform an unconscious person that he is

under arrest. However, some type of actual restraint is necessary so that when an individual regains consciousness, he may immediately be made aware that he has been arrested and that his liberty has been restricted so that he is not free to go. The means of actual restraint necessary to comply with this statutory requirement may vary according to what is reasonable under the circumstances of each situation. For instance, it may be reasonable in some instances to place a guard outside of an individual's hospital room and it may be reasonable in other cases for the police to merely inform the hospital officials that the individual has been placed under arrest and is not to be discharged without the consent of the police. Whatever the case, such actual restraints must take place before the individual's blood is drawn, or he will not have been under arrest and the blood will have been taken in violation of the implied consent statute.

Disposition of the State's other reserved questions of law requires us first to deal with the issue of whether 47 O.S.Supp. 1988, § 753 is constitutional. It has long been held that warrantless searches and seizures are per se unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, an exception to this general rule was set forth by the Supreme Court in *Schmerber v. State of California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), where it was found that an arresting officer could require an individual to submit to a blood alcohol test where the officer reasonably believed that under the circumstances, the delay necessary to secure a warrant could have resulted in the destruction of evidence. *Id.*, 384 U.S. at 770, 771, 86 S.Ct. at 1835, 1836.

■ Title 47 O.S.Supp.1988, § 753 allows an officer to take blood against the objections of a conscious person whom he has placed under arrest when, "the investigating officer has probable cause to believe that the person under arrest, while intoxicated, has operated his motor vehicle in such a manner as to have caused the death or serious physical injury to any other per-

son or persons." This statutory provision does not require the constitutional mandates set forth in *Schmerber*. However, although section 753 is not constitutionally adequate on its face, it may be applied in a way that satisfies constitutional requirements if the investigating officer only instructs that blood be drawn from the driver when the officer reasonably believes that under the circumstances, any delay necessary to secure a warrant may result in the loss of evidence. Thus, the determination of whether section 753 has been applied in a constitutionally sound manner must be made on a case by case basis.

■ Under 47 O.S.Supp.1988, § 753, a conscious driver may be required to submit to a blood test under certain circumstances. The State asks this Court whether an unconscious driver in similar circumstances should be denied the right to withdraw consent to a blood test upon regaining consciousness. In *Sartin v. State*, 617 P.2d 219, 222 (Okl.Cr.1980), this Court held that "[u]nder the implied consent statute, a conscious person has the right to refuse to submit to the test, and equal protection requires that an unconscious person be afforded the same right of refusal as that given a conscious person." It follows then, that if the implied consent statute does not afford a conscious person the right to refuse the blood test in a certain situation, equal protection would require that an unconscious person in the same situation not be treated differently.

■ The State further asks whether the blood test results could have been admitted under the exigent circumstances exception to the warrant requirement as set forth in *Schmerber*. The driver in *Schmerber* was arrested without a warrant as the officer had probable cause to believe that he was driving under the influence. The Supreme Court found that under the facts of the case, where time had been taken to bring the accused to a hospital and investigate the scene of the accident, there was not sufficient time to seek out a magistrate to secure a warrant. The delay necessary to obtain a warrant may have resulted in the destruction of evidence. Thus, the attempt

to secure evidence of blood alcohol by taking a blood test was an appropriate incident to the defendant's arrest and there was no violation of the forth amendment warrant requirement. *Schmerber*, 384 U.S. at 770, 771, 86 S.Ct. at 1835, 1836. We find that under similar circumstances, this procedure would be acceptable in Oklahoma not only based upon the federal constitutional standards set forth in *Schmerber*, but also because it does not conflict with the procedures allowed by Oklahoma's implied consent statutes.

■ Finally, the State has posed several questions relating to the weight of rulings made by district court judges. However, we find that these questions were not properly reserved for appeal because they were not reserved by the State at trial. Instead, they were raised by the district judge after the State had rested its case. Title 22 O.S.1981, § 1053 clearly limits appeals upon reserved questions of law to those "reserved by the state or a municipality." This does not include questions asked by a district judge as was the situation in this case. Because the State's right to appeal rests on statutory authority that cannot be enlarged by construction, we will not address these questions. *See State v. Humphrey*, 85 Okl.Cr. 153, 186 P.2d 664 (1947).

RESERVED QUESTIONS OF LAW ANSWERED.

LANE, P.J., and PARKS, J., concur.

JOHNSON, J., concurs in part/dissents in part.

LUMPKIN, V.P.J., dissents.

JOHNSON, Judge, concurring in part/dissenting in part.

I respectfully dissent to the holding of the court in this case as it relates to the finding that there was not a proper arrest and, therefore, the blood sample taken was inadmissible. I concur with the court's findings as it relates to the last part of the opinion dealing with certain questions that could not be brought before this Court due to the fact that several questions were not properly reserved pursuant to the provisions of 22 O.S.1981, § 1053.

It seems odd that you can take blood from someone who was involved in an accident that caused a fatality where the person giving the blood was conscious, but you could not take blood from the person that was comatose. This, quite frankly, does not make sense.

The U.S. Supreme Court has held that it is permissible to draw blood from an unconscious driver that is believed to be under the influence of alcohol because of exigent circumstances. *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957).

Therefore, the only true question in this case is what does or does not constitute an arrest of an unconscious person. Again, to say that the arrest can only occur as it relates to the unconscious person when we have some form of restraint does not make sense. How do you tell a passed-out drunk that he or she is under arrest.

The court suggests that one way to accomplish an arrest would be to place a police officer or guard outside an individual's room in the hospital, thereby restraining or constraining the accused. If there ever was a case for "exigent circumstances" the unconscious drunken driver would fit the mold. Obviously, with the passage of time the blood alcohol content is lowered. You do not have time to obtain a search warrant or wait for someone to be revived to ask for consent. Therefore, a speedy test is required.

It is clear under the law that if you can take the blood from a conscious person that refuses to give such blood, why should you not be able to take blood from the unconscious or nonconsenting individual. With every breath that the party takes, the blood content goes away. There is no time to wait for search warrants, etc.

The problem then, as the court has addressed, is what is an arrest of an unconscious person. Without making a definite bright-line rule, it would seem that any form of restraint or constraint would be appropriate, and the trial judge would have to determine under the totality of the circumstances whether the party was under arrest or not. Such factors could be notice

**648**

or statement to a nurse at the nurses station that the party is under arrest and they are not to leave the hospital and the department should be notified when the party regains consciousness, an officer at the door, a note or notice on the door together with some possible notice in the room; in other words, some overt act by the police to as best possible notify the accused or family of the arrest.

As noted above, the U.S. Supreme Court has basically decided two cases in this area, the one the court cites as *Schmerber,* but one more direct in point case is *Breithaupt. Schmerber* would apply where we have the conscious driver; *Breithaupt* would apply to the unconscious driver. It is my opinion that this Court has answered the arrest portion of the case when we have effectively held that arrest occurs when ones liberty of movement is interrupted. *Castellano v. State,* 585 P.2d 361 (Okl.Cr.1978). The court in that case adopted the arrest standard as outlined in *corpus juris.* 6A C.J.S. Arrest § 2. Therefore, I would hold that if the trial court finds that there was, as the standard says, any act which indicates an intention to take a person into custody and subject the person to arrest, then the trial court could find that the arrest did occur and this would be sufficient for the taking of the blood. Therefore, I would reverse the holding of the magistrate.

LUMPKIN, Vice Presiding Judge, dissenting.

I join in the dissent of Judge Johnson. In addition, this Court has already adopted guidelines for the trial courts to utilize in determining the admissibility of this type of evidence. *State v. Wood,* 576 P.2d 1181 (Okl.Cr.1978), set forth the criteria which should be utilized in this case. The Court fails to even acknowledge this prior authority in forming its answer to the questions presented. I also disagree with the Court's discussion of the constitutionality of 47 O.S.Supp.1989, § 753. I find that Section 753 is constitutional on its face. See also, *Harris v. State,* 773 P.2d 1273, 1274, 1277 (Okl.Cr.1989) (Lumpkin, J., Specially Concurring) for discussion of constitutionality of Oklahoma's Implied Consent law.