OSCN Found Document:CRIPPS v. STATE

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 CRIPPS v. STATE
2016 OK CR 14
Case Number: F-2015-209
Decided: 06/30/2016
BRIAN CHRISTOPHER CRIPPS, Appellant, v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2016 OK CR 14, __ __

 

 



SUMMARY OPINION




SMITH, PRESIDING JUDGE:


¶1 Brian Christopher Cripps was tried by jury and convicted of Manslaughter, Second Degree, Automobile, in violation of 21 O.S.2011, § 716, in the District Court of Tulsa County, Case No. CF-2012-4519.[1] In accordance with the jury's recommendation the Honorable Jefferson D. Sellers sentenced Cripps to four (4) years imprisonment and a fine of $1000. Cripps appeals from this conviction and sentence. This court heard oral argument in this matter on June 7, 2016.



¶2 Cripps raises three propositions of error in support of his appeal:[2]

 



I. It was reversible error for the court to admit Officer Stephens' opinion that the physical evidence proved Mr. Cripps was driving the vehicle.
II. Mr. Cripps is entitled to a new trial because the District Court should have quashed the blood alcohol content evidence.
III. Mr. Cripps cannot be retried for manslaughter - First Degree or Negligent Homicide as he was acquitted by the jury.

 

¶3 After thorough consideration of the entire record before us, including the original record, transcripts, exhibits and briefs, we find that the law and evidence do not require relief.

¶4 We find in Proposition I that the trial court did not abuse its discretion in admitting expert testimony from the State's accident reconstruction witness, Stephens. Day v. State, 2013 OK CR 8, ¶ 4, 303 P.3d 291, 295. An abuse of discretion is any unreasonable or arbitrary action made without proper consideration of the relevant facts and law, also described as a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170. Expert opinion is admissible when it (1) is based on sufficient facts or data; (2) is the product of reliable principles and methods; and (3) the witness has applied those principles and methods reliably to the facts of the case. 12 O.S.2011, § 2702.[3] Stephens never testified that Cripps was driving the car at the time of the collision. He said that he would expect Cripps to be on the vehicle's left side, he would expect the passenger to be on the right side, and that the decedent had been in the back seat. An expert may give an opinion on the ultimate issue, as long as he does not tell jurors what result to reach. 12 O.S.2011, § 2704; Day, 2013 OK CR 8, ¶ 11, 303 P.3d at 297. Stephens did not tell jurors what result to reach.

¶5 In making this claim Cripps mischaracterizes Stephens' expert opinion evidence. Stephens based his conclusion about Cripps' location on forensic and crime scene evidence. Stephens did not give opinions on physics, forensic pathology, and bio-mechanics. Stephens had specialized training in accident reconstruction and traffic investigation, including homicide accidents. His training included training in mathematics, crime scene evidence and determination of location from wreckage and injuries. This area of expertise requires neither medical nor engineering qualifications. We are unpersuaded by Cripps' cited authority, which primarily consists of civil cases from other jurisdictions which do not address the issues in this case. Cripps also complains that Stephens' opinions were based on speculation rather than evidence, and not reliable under 12 O.S.2011, § 2702. The record does not support these claims. This proposition is denied.

¶6 We find in Proposition II that the trial court did not err in admitting evidence of Cripps' blood alcohol content. We review a trial court's decision on a motion to suppress for abuse of discretion; where the issue is one of illegal search and seizure we defer to the trial court's findings of fact unless they are clearly erroneous, and review legal conclusions de novo. State v. Alba, 2015 OK CR 2, ¶ 4, 341 P.3d 91, 92. Officers drew Cripps' blood under Oklahoma's implied consent statutes. Any driver who could be cited for an accident resulting in a person's immediate death shall submit to alcohol testing as soon as practicable after the accident; the fact of the accident serves as probable cause. 47 O.S.2011, § 10-104(B). Section 10-104(B) applies to all drivers involved in fatality accidents, whether or not they are cited for a traffic offense or arrested at the scene. Bemo v. State, 2013 OK CR 4, ¶ 5, 298 P.3d 1190, 1191; Sanders v. State, 2002 OK CR 42, ¶ 11, 60 P.3d 1048, 1050; Guest v. State, 2002 OK CR 5, ¶ 8, 42 P.3d 289, 291.[4]

¶7 Cripps argues that § 10-104(B) is invalid under a recent United States Supreme Court case, Missouri v. McNeely, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). He is mistaken. Missouri had an implied consent statute that provided for a nonconsensual blood draw whenever an officer reasonably believed an arrested person committed an offense while intoxicated or drugged. Mo Ann. Stat. § §577.020.1, 577.041 (West 2011). In McNeely, the Court determined that, where a driver is stopped and police suspect he is driving under the influence, the natural metabolism of alcohol in the bloodstream does not constitute an exigency that always justifies an exception to the Fourth Amendment warrant requirement for nonconsensual blood testing. McNeely, 133 S.Ct. at 1556. The Court found that exigency must be determined case by case, based on the totality of the circumstances. Id. The Court's focus was its rejection of the claim that dissipation of alcohol from the bloodstream is, standing alone, an exigent circumstance in every routine case of driving under the influence. Id. at 1561. For this reason the Court rejected Missouri's per se rule.

¶8 There is a significant difference between § 10-104(B) and the section of the Missouri statute at issue in McNeely. Oklahoma law creates a per se rule requiring nonconsensual blood testing of a driver involved in an accident who could be cited for a traffic offense, where the accident involves either a fatality or great bodily injury of any person, including the driver. 47 O.S.2011, § 10-104(B). Of all the Oklahoma statutes concerning blood tests for traffic offenses, whether consensual, nonconsensual, or with implied consent, § 10-104(B) is the only statute which applies in these very narrow circumstances. The exigent circumstance justifying the per se rule in § 10-104(B) is the existence of great bodily injury or a fatality to persons including the driver. Put another way, § 10-104(B) does not depend solely on the dissipation of alcohol in the bloodstream over time as an exigent circumstance. Missouri's implied consent statute contains a similar (though not identical) provision; however, there was neither an accident nor a fatality in McNeely and that provision was not used. The majority in McNeely rejected the claim that states needed a per se rule based on the dissipation of alcohol in the blood in order to promote enforcement of laws against drunk driving. The per se rule found unconstitutional in McNeely is simply a different rule from the per se rule in § 10-104(B), and the difference is material.

¶9 Cripps claims he should have had the right to revoke his implied consent when he regained consciousness. He relies on cases in which this Court held that, since an implied consent statute allowed a conscious person to refuse consent, an unconscious person must be afforded that same opportunity. Sartin v. State, 1980 OK CR 65, 617 P.2d 219; State v. Wood, 1978 OK CR 25, 576 P.2d 1181. However, neither of those cases refer to § 10-104(B), which does not contain a provision allowing a defendant, conscious or unconscious, to refuse consent. 47 O.S.2011, § 10-104(B) (drivers subject to the statutory provision "shall" submit to drug and alcohol testing). Under that statute, Cripps had no right to revoke his implied consent. Cripps' blood was legally taken under § 10-104(B). No warrant was necessary, and it is unnecessary for us to address Cripps' arguments involving warrantless seizure and the exclusionary rule. The trial court did not abuse its discretion in denying Cripps' motion to suppress, and this proposition is denied.[5]


FOOTNOTES

¶10 We find in Proposition III that, because we found no error in the preceding propositions, there is no question of a retrial. This proposition is moot.

DECISION

¶11 The Judgment and Sentence of the District Court of Tulsa County is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2016), the MANDATE is ORDERED issued upon the delivery and filing of this decision.


AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE JEFFERSON D. SELLERS, DISTRICT JUDGE


 


 
 
 
 ATTORNEYS AT TRIAL

 ROBERT WILLIAMS
 KENSEY RUBLE
 1080 BOULDER TOWERS
 1437 SOUTH BOULDER AVENUE
 TULSA, OK 74119-3640
 COUNSEL FOR DEFENDANT

 
 
 
 
 MICHELLE KEELY
 KEVIN KELLER
 ASSISTANT DISTRICT ATTORNEYS
 500 S. DENVER, STE. 900
 TULSA, OK 74103
 COUNSEL FOR THE STATE
 
 
 ATTORNEYS ON APPEAL

 NEIL D. VAN DALSEM
 ROBERT SCOTT WILLIAMS
 TAYLOR, RYAN, MINTON, VAN DALSEM & WILLIAMS, P.C.
 1437 SOUTH BOULDER, SUITE 1080
 TULSA, OK 74119
 COUNSEL FOR APPELLANT

 
  

 E. SCOTT PRUITT
 ATTORNEY GENERAL OF OKLAHOMA
 TIMOTHY J. DOWNING
 ASSISTANT ATTORNEY GENERAL
 313 NE 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 



OPINION BY: Smith, P.J.
Lumpkin, v.p.J.: CONCUR IN RESULT
Johnson, J.: CONCUR
Lewis, J.: CONCUR
HUDSON, J.: CONCUR IN PART/DISSENT IN PART


FOOTNOTES


[1] Cripps was acquitted of the charged crime, manslaughter in the first degree by automobile.



[2] For purposes of this appeal this Court treats the separate issues raised in Cripps' brief as separate propositions of error, inartfully but correctly raised under our Rules. Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2016).



[3] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), govern admissibility of scientific and other technical or specialized evidence. Day, 2013 OK CR 8, ¶ 4, 303 P.3d at 295. In Oklahoma criminal cases, Daubert inquiry is explicitly limited to novel scientific evidence; if the testimony is not novel, the trial court need not hold a Daubert hearing. Day, id. at ¶ 5, 295. A thorough review of the record shows that Stephens' testimony was not novel, and although he received a Daubert hearing, none was necessary.



[4] At the hearing on Cripps' motion to suppress, neither party argued § 10-104(B). Instead, they argued whether exigent circumstances justified the nonconsensual blood draw. The trial court found there were exigent circumstances based on the officer's testimony that Cripps was so critically injured he believed that, without an immediate blood draw, Cripps would either die or be taken to surgery and become unavailable. The record shows this decision was not an abuse of discretion.



[5] On June 23, 2016, the United States Supreme Court decided Birchfield v. North Dakota, No. 14-1468 (June 23, 2016). While Birchfield discusses blood draws, it does not change our conclusion that 47 O.S.2011, § 10-104(B) is constitutional as applied in this case.




 


 



LUMPKIN, VICE PRESIDING JUDGE: CONCURRING IN RESULT


¶1 I concur in affirming the judgment and sentence but cannot agree with the analysis that the majority uses to resolve the case.

¶2 As to Proposition One, I note that challenges can be made which may require a Daubert/Kuhmo/Taylor evidentiary hearing to permit a party to show that an accepted scientific method or principle is no longer valid.

¶3 Title 12 O.S.2011, § 2702 governs the admissibility of opinion testimony based upon scientific, technical or other specialized knowledge. Taylor v. State, 1995 OK CR 10, ¶ 14, 889 P.2d 319, 326. This Court adopted the United States Supreme Court's analysis in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as the proper method to address the admissibility of all types of scientific evidence. Id., 1995 OK CR 10, ¶ 16, 889 P.2d at 329. In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150-51, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999), the United States Supreme Court explained that the Daubert analysis is not limited to "scientific evidence" but applied to all novel expert testimony. We adopted Kumho in Harris v. State, 2000 OK CR 20, ¶ 9, 912 P.3d 489, 492-93. Harris v. State, 2004 OK CR 1, ¶ 29, 84 P.3d 731, 745.

¶4 Application of the Daubert standard is not limited to novel or unconventional techniques or methods. Id., 509 U.S. at 592 n. 11, 113 S.Ct. at 2796 n. 11 ("Of course, well-established propositions are less likely to be challenged than those that are novel, and they are more handily defended."); Day v. State, 2013 OK CR 8, ¶ 1, 303 P.3d 291, 300 (Lumpkin, J., concurring) ("Just because something has been accepted in the past does not mean it continues to meet the Daubert criteria for admissibility into evidence."). Similarly, the plain language of 12 O.S.2011, § 2702 reveals that the requirements of relevance and reliability equally apply to both novel and accepted scientific principles and methods. See State v. Young, 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955 ("[S]tatutes are to be construed according to the plain and ordinary meaning of their language.").

¶5 This is not to say that a Daubert hearing is necessary in every case where a party seeks to introduce scientific, technical or other specialized knowledge. Trial judges possess "the discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." Kumho, 526 U.S. at 152, 119 S.Ct. at 1176; See Gilson v. State, 2000 OK CR 14, ¶ 64, 8 P.3d 883, 907. Where an expert's factual basis, data, principles, methods or their application are called sufficiently into question by competent evidence the trial judge must determine whether the proffered testimony meets the Daubert/Kuhmo standard. Id., 526 U.S. at 149, 119 S.Ct. at 1175.

¶6 In the present case, the District Court did not abuse its discretion when it determined that the accident reconstruction expert's opinions were relevant and reliable under § 2702. I agree that no relief is required.

¶7 As to Proposition Two, I concur with the majority's conclusion that the trial court did not err in admitting evidence concerning Cripps' blood alcohol concentration. I likewise agree that the United States Supreme Court's opinion in Missouri v. McNeely, 569 U.S. ___, 133 S.Ct. 1552, 185 L.Ed.2d 698 (2013), did not render 47 O.S.2011, § 10-104(B) unconstitutional but it does bring its validity into question. Thus, I cannot agree with the majority's determination that McNeely is inapplicable to the present case.

¶8 The Supreme Court in McNeely held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute [a per se] exigency in every case sufficient to justify conducting a blood test without a warrant." McNeely, 133 S. Ct. at 1568. Instead, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." Id., 133 S.Ct. at 1563. A warrantless search may be reasonable when "'there is compelling need for official action and no time to secure a warrant.'" Id., 133 S.Ct. at 1559 (quoting Michigan v. Tyler, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978)). While McNeely expressly affirmed Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), the Supreme Court clarified that its determination in Schmerber was strictly based on the facts of the case after consideration of all of the facts and circumstances of that particular case. Id., 133 S.Ct. at 1560, citing Schmerber, 384 U.S. at 772, 86 S.Ct. at 1836.

¶9 McNeely is applicable to the present case because § 10-104(B) provides for the administration of a drug and alcohol test to any driver of any vehicle involved in accident who could be cited for any traffic offense where said accident resulted in death or great bodily injury. Section 10-104(B) does not require either a warrant or exigent circumstances prior to the administration of a nonconsensual drug and alcohol test. Thus, it would appear that § 10-104(B) is contrary to the holding set forth in McNeely, unless the narrow grounds upon which a warrantless drug and alcohol test can be conducted is a sufficient narrowing under McNeely.

¶10 Although § 10-104(B) does not explicitly meet the requirements of McNeely, the statute can be applied in a constitutional manner. Murphy v. State, 2012 OK CR 8, ¶ 32, 281 P.3d 1283, 1292 ("[I]t is the duty of the courts, whenever possible, to harmonize acts of the Legislature with the Constitution."). Requiring officers to only cause a nonconsensual blood draw in reliance upon either a warrant or exigent circumstances allows § 10-104(B) to be construed as constitutional.

¶11 The majority contends that McNeely is not applicable to the present case because the Supreme Court noted with approval that a majority of states either prohibit nonconsensual blood testing or significantly restrict it to, for instance, cases involving an accident resulting in death or serious bodily injury. (citing McNeely, 133 S.Ct. at 1566-67). However, the cited passage is not part of the Supreme Court's opinion. Instead, this passage is part of the plurality opinion of Justices Sotomayor, Scalia, Ginsburg and Kagan. Justice Kennedy, who made up part of the majority opinion for the holding of the case, did not join this part of the opinion. Id., 133 S.Ct. at 1568-69. Instead, Justice Kennedy emphasized "that every case be determined by its own circumstances" and explained that the Court, in due course, might find it appropriate and necessary to consider what rules, procedures and protocols that states and other governmental entities can adopt to meet the reasonableness requirements of the Fourth Amendment. Id., 133 S.Ct. at 1569 (Kennedy, J., concurring in part). Justices Roberts, Breyer and Alito did not join in any part of the majority opinion, however, they agreed that in the absence of a compelling need to prevent the imminent destruction of important evidence, an officer must seek a warrant before blood can be drawn. McNeely, 133 S.Ct. at 1569 (Roberts, C.J., concurring in part, dissenting in part). Accordingly, it is clear that the Supreme Court's pronouncement in McNeely applies to the warrantless blood draw in the present case.

¶12 The circumstance is further complicated by our interpretation of the Oklahoma statute which the plurality of Justices in McNeely relied upon in reaching this conclusion. The plurality cited to Okla. Stat., Tit. 47, § 753 (West Supp.2013) as an example of a state placing significant restrictions as to when police officers may obtain a blood sample despite a suspect's refusal. McNeely, 133 S.Ct. at 1566 n. 9. It must be noted that in State v. Shepherd, 1992 OK CR 69, 840 P.2d 644, this Court construed § 753 so that it would harmonize with the requirements of the Fourth Amendment.



Title 47 O.S.Supp.1988, § 753 allows an officer to take blood against the objections of a conscious person whom he has placed under arrest when, "the investigating officer has probable cause to believe that the person under arrest, while intoxicated, has operated his motor vehicle in such a manner as to have caused the death or serious physical injury to any other person or persons." This statutory provision does not require the constitutional mandates set forth in Schmerber. However, although section 753 is not constitutionally adequate on its face, it may be applied in a way that satisfies constitutional requirements if the investigating officer only instructs that blood be drawn from the driver when the officer reasonably believes that under the circumstances, any delay necessary to secure a warrant may result in the loss of evidence. Thus, the determination of whether section 753 has been applied in a constitutionally sound manner must be made on a case by case basis.



Shepherd, 1992 OK CR 69, ¶ 6, 840 P.2d at 646. For these reasons, it is inadvisable to put weight in the plurality's language in McNeely.

¶13 McNeely requires that the finding of exigency be determined on a case-by-case basis review of the totality of the circumstances. Therefore, the determination of whether § 10-104(B) has been applied in a constitutionally sound manner must be made on a case by case basis.

¶14 In the present case, the trial court actually conducted this review and determined that, under the totality of the circumstances, Officer Ohnesorge's decision to cause Cripps' blood to be drawn was reasonable and supported by exigent circumstances. Noting that Cripps' was unconscious and was scheduled to go into surgery, the trial court found that the officer's decision to have blood drawn was necessary to avoid loss of this evidence and the officer had no time to secure a warrant. (1/23/14 Mtn. Tr. 68-69).[1] As these facts clearly establish exigent circumstances, I find that the trial court did not abuse its discretion when it denied Cripps' motion to suppress. No relief is required.

¶15 At this stage of the development of the law on this issue, judges, prosecutors, defense counsel and individuals who instruct law enforcement personnel regarding the methods to conduct Constitutional searches should emphasize the necessity to rely on the guidelines of Schmerber v. California, supra, rather than the carte blanche language in our statute.


FOOTNOTES


[1] It goes without saying that if Cripps were taken into surgery, other drugs would be administered and the blood alcohol content of his blood would be compromised and contaminated thus affecting the validity of a subsequent test.




 


 



HUDSON, J., CONCURRING IN PART/DISSENTING IN PART


¶1 In the constellation of cases embodied within this Court's Fourth Amendment jurisprudence, today's decision will surely be a falling star. The majority opinion in this case is notable primarily for its faulty logic, its disregard of three separate decisions from the United States Supreme Court which control this case and its indifference to our Fourth Amendment values. I concur in affirming the judgment and sentence but dissent to the majority opinion's disregard in Proposition II of the Fourth Amendment limitations placed on 47 O.S.2011, § 10-104(B) by clearly-established Supreme Court law.

¶2 The majority opinion acknowledges that 47 O.S.2011, § 10-104(B) creates a per se rule requiring blood testing where a vehicular accident has resulted in immediate death or great bodily injury. Missouri v. McNeely, __U.S.__, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013) holds that law enforcement officers are not categorically permitted to obtain a non-consenting suspect's blood sample without a warrant simply because alcohol is leaving a suspect's blood stream. The Supreme Court in McNeely held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." Id., 133 S. Ct. at 1568. Instead, in each case law enforcement must examine the totality of the circumstances in determining whether such a warrantless search is reasonable and permissible under McNeely. Specifically, law enforcement must consider whether "there is compelling need for official action and no time to secure a warrant." Id. at 1559 (quoting Michigan v. Tyler, 436 U.S. 499, 509, 98 S. Ct. 1942, 1949, 56 L. Ed. 2d 486 (1978)).

¶3 McNeely reaffirmed the Supreme Court's holding in Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) which likewise evaluated the totality of the circumstances in determining whether a warrantless, nonconsensual blood draw by police was justified by exigent circumstances. McNeely, 133 S. Ct. at 1559-60; Schmerber, 384 U.S. at 770-72, 86 S. Ct. at 1835-36.

¶4 Undeterred, the majority opinion in the present case concludes that McNeely does not prohibit the use of per se rules of this type in vehicular homicide or great bodily injury cases. The holding in McNeely, the majority reasons, applies only to routine DUI investigations not involving immediate death or great bodily injury. The majority ignores, however, that Schmerber itself involved a two-person DUI non-fatality injury accident. Id., 384 U.S. at 758 n.2, 86 S. Ct. at 1829 n.2. And the Fourth Amendment unquestionably applies regardless of whether we are addressing a vehicular homicide case or a non-injury DUI case as in McNeely. As another court has recognized, "[t]he seriousness of the offense does not itself create exigency[.]" State v. Stavish, 868 N.W.2d 670, 680 (Minn. 2015) (citing Mincey v. Arizona, 437 U.S. 385, 394, 98 S. Ct. 2408, 2414, 57 L. Ed. 2d 290 (1978)). Nor does the difference between attempting to obtain evidence essential to a probable DUI charge and a vehicular homicide charge "reduce the quantum of evidence the State must present to prove exigent circumstances." Stavish, 868 N.W.2d at 680.

¶5 No one would dispute that the Fourth Amendment would require a search warrant for the investigation of a residence where a homicide occurred absent some indication that evidence would be lost, destroyed, or removed during the time required to obtain a search warrant; where a police presence minimized that possibility; and where a warrant could be easily and conveniently obtained. Notably, those were the facts in Mincey v. Arizona, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), where the Supreme Court rejected a categorical exception to the warrant requirement based on the existence of a possible homicide at a crime scene which, according to the State of Arizona, presented an emergency situation demanding immediate action regardless of the surrounding circumstances. Id., 437 U.S. at 392-94, 98 S. Ct. at 2413-14.

¶6 The Mincey court "decline[d] to hold that the seriousness of the offense under investigation itself creates exigent circumstances of the kind that under the Fourth Amendment justify a warrantless search." Id., 437 U.S. at 394, 98 S. Ct. at 2414. Yet, the majority opinion in the present case sanctions forced blood draws--described by the Supreme Court as an invasion of bodily integrity implicating a person's "most personal and deep-rooted expectations of privacy[,]" McNeely, 133 S. Ct. at 1558 (internal quotation omitted)--based on little more than the seriousness of the offense being investigated, i.e., vehicular accidents resulting in death or great bodily injury. See also Schmerber, 384 U.S. at 770, 86 S. Ct. at 1835 (noting that absent an emergency, search warrants are generally required for searches of dwellings and "no less could be required where intrusions into the human body are concerned.").

¶7 Nothing in McNeely endorses application of a per se rule in this context which disregards the Fourth Amendment prohibition against warrantless searches. On the contrary, everything in McNeely and Schmerber tells us that the regular exigency analysis must be applied in this case. That is precisely what Judge Musseman did in denying the defense motion to suppress--he found the exigency exception to the warrant requirement satisfied in the present case. As the majority opinion holds alternatively, the record shows Judge Musseman's decision upholding the nonconsensual blood draw in this case was not an abuse of discretion. Cripps, slip op. at 4 n.4.

¶8 Perhaps the exigency analysis will be satisfied in the vast majority of fatality-DUI cases. But that is not to say police will act reasonably in every fatality-DUI case when they do not obtain a warrant before conducting forced blood-draws. On this last point, I repeat what McNeely held: "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." McNeely, 133 S. Ct. at 1561.

¶9 McNeely makes clear that law enforcement officers are not categorically permitted to obtain a non-consenting suspect's blood sample without a warrant simply because alcohol is leaving a suspect's blood stream. The majority in this case wrongly limits McNeely's reach. This is particularly troubling considering the "cardinal principle" embodied by the Fourth Amendment that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Mincey, 437 U.S. at 390, 98 S. Ct. at 2412 (quoting Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967) (footnotes omitted)).

¶10 Today's decision is especially unsettling considering the subject matter. DUI-related accidents and vehicular homicides are a national epidemic with the potential to impact directly each and every person who drives on our streets and highways. Police and prosecutors are, in the first instance, left to deal with the legal consequences of these tragic--and entirely preventable--crimes. Today's decision does them no favors. Instead of clarifying that § 10-104(B) can (and must) be applied in a constitutional manner in light of clearly-established Supreme Court law as we have with other statutes in this context,[1] the majority merely tells police and prosecutors that there is nothing to see here.

¶11 The majority's insistence upon marginalizing McNeely and Schmerber in this way adds uncertainty to the law where there should be none. We leave the bench, bar and public wondering what the law truly is and, in the process, leave the fate of DUI-related vehicular accidents involving immediate death or injuries hanging in the balance. Today's decision is not built to last--we are simply delaying the inevitable.[2] For the above reasons, I concur in part and dissent in part to the majority opinion in this case.


FOOTNOTES


[1] In State v. Shepherd, 1992 OK CR 69, 840 P.2d 644, this Court addressed the constitutional limits of 47 O.S.Supp.1988, § 753, a similar provision that allows an officer to take blood against the objections of a conscious person whom he has placed under arrest when "the investigating officer has probable cause to believe that the person under arrest, while intoxicated, has operated his motor vehicle in such a manner as to have caused the death or serious physical injury to any other person or persons." This Court held that § 753 did not meet the constitutional mandates set forth in Schmerber. Nonetheless, § 753 could be applied in a constitutional manner, this Court held, "if the investigating officer only instructs that blood be drawn from the driver when the officer reasonably believes that under the circumstances, any delay necessary to secure a warrant may result in the loss of evidence." Shepherd, 1992 OK CR 69, ¶¶ 5-6, 840 P.2d at 646 (citing Schmerber, 384 U.S. at 770-71).



[2] This conclusion is bolstered by the Supreme Court's recent decision in Birchfield v. North Dakota, No. 14-1468, slip op. at 35 (U.S. Jun. 23, 2016) ("a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to do what is needed to take a breath test due to profound intoxication or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be.").










 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1992 OK CR 69, 840 P.2d 644, STATE v. SHEPHERD
Discussed at Length
 1995 OK CR 10, 889 P.2d 319, TAYLOR v. STATE
Discussed at Length
 1978 OK CR 25, 576 P.2d 1181, STATE v. WOOD
Discussed
 2002 OK CR 5, 42 P.3d 289, 73 OBJ 581, GUEST v. STATE
Discussed
 2002 OK CR 42, 60 P.3d 1048, SANDERS v. STATE
Discussed
 2004 OK CR 1, 84 P.3d 731, HARRIS v. STATE
Discussed
 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed
 2012 OK CR 8, 281 P.3d 1283, MURPHY v. STATE
Discussed
 2013 OK CR 4, 298 P.3d 1190, BEMO v. STATE
Discussed
 2013 OK CR 8, 303 P.3d 291, DAY v. STATE
Discussed at Length
 2015 OK CR 2, 341 P.3d 91, STATE v. ALBA
Discussed
 2000 OK CR 20, 13 P.3d 489, 71 OBJ 2675, Harris v. State
Cited
 1980 OK CR 65, 617 P.2d 219, SARTIN v. STATE
Discussed
 1999 OK CR 14, 989 P.2d 949, 70 OBJ 1076, State v. Young
Discussed
 2000 OK CR 14, 8 P.3d 883, 71 OBJ 2063, Gilson v. State
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2702, Testimony by Experts
Discussed at Length
 12 O.S. 2704, Opinion on Ultimate Issue
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 716, Second Degree Manslaughter
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 10-104, Duty to Give Information and Render Aid - Drug and Alcohol Testing
Discussed at Length
 47 O.S. 753, Refusal to Submit to Test - Revocation of License - Reinstatement of License
Discussed