2009 OK CR 10

**John Christian BURTON, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2007–511.**

Court of Criminal Appeals of Oklahoma.

March 6, 2009.

Anna Johnson, Assistant Public Defender, Tulsa, OK, attorney for defendant at trial.

Scott Gengras, Assistant District Attorney, Tulsa, OK, attorney for State at trial.

Stuart Southerland, Assistant Public Defender, Tulsa, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Oklahoma Attorney General, Donald D. Self, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

### SUMMARY OPINION

A. JOHNSON, Vice Presiding Judge.

¶1 Appellant John Christian Burton was tried by jury and convicted in the District Court of Tulsa County, Case No. CF–2006–92, of two counts of Robbery with a Firearm, After Former Conviction of Two or More Felonies, in violation of 21 O.S.2001, § 801. The jury fixed punishment at thirty-five years imprisonment and a $500.00 fine on each count. The Honorable Clancy Smith, who presided at trial, sentenced Burton accordingly and ordered the sentences to be served consecutively. From this judgment and sentence Burton appeals, raising the following issues:

(1) whether the warrantless search of his house was lawful;

(2) whether it was error to try both robbery counts together in the same jury trial;

(3) whether he received ineffective assistance of counsel;

(4) whether he should have been allowed to more fully question the State's witnesses regarding at least one other robbery where another suspect was identified;

(5) whether the trial court should have responded to the jury's question of whether his sentences would be served concurrently or consecutively; and

(6) whether an accumulation of error deprived him of a fair trial.

¶ 2 For the reasons set forth below, we find that the warrantless search of Burton's home was unlawful. We therefore vacate the judgment and sentence and remand for a new trial.

## BACKGROUND

¶ 3 On the morning of December 30, 2005, Tulsa police surrounded a house in which they believed Burton was present. Burton was a suspect in the robbery of an Alberston's Express store that occurred earlier that morning. He was also a suspect in an early-morning robbery of a Drug Warehouse store on December 23rd. Officers believed Burton was the robber in both cases based on eyewitness identifications, surveillance video, and similarities between the robberies. In particular, in both instances, the robber insisted on taking Newport cigarettes in addition to cash.

¶ 4 Police began arriving at Burton's residence shortly after 8:00 a.m. in response to a report from an officer near the house that he had seen a person he believed to be Burton entering it. Police did not have a warrant for Burton's arrest, nor did they have a search warrant for the residence. Nevertheless, police set up a surveillance and containment perimeter around the house. After waiting over three hours for someone to emerge, a group of officers approached the house to knock on the front door. Meanwhile, other officers moved closer to the two-story structure. One officer positioned himself on a stairwell in the rear of the house leading to a second floor entrance.

¶ 5 Officers banged on the front door, shouted in windows, and used a loudspeaker for nearly thirty minutes in an effort to get the occupants to come out. During this time, the officer stationed on the stairwell heard movement inside the house.[1] Eventually, one individual came out the front door. At the same time, another individual was pulled out of the residence by police through an open bathroom window. These people let officers know that Burton was in the house.

¶ 6 At this point, officers decided to enter the residence. Sergeant Walker, the officer in charge, explained that entry to the residence was necessary because he believed, based on the reported sounds of moving furniture, that an armed robbery suspect was barricading himself in the house on an upstairs floor and that this placed the police in a bad tactical position.[2] After entering the house, police conducted a protective sweep and found Burton hiding in the attic. During the sweep, and as Burton was being taken into custody, officers observed a number of items of evidentiary value. Although officers noted the presence of potential pieces of evidence, none was actually seized at this point. Instead, Burton was taken out of the residence, placed in a police car, and asked to sign a "search waiver." According to officers, Burton signed the waiver voluntarily.

¶ 7 After Burton signed the waiver, police seized a number of items from the residence, including: (1) a dark coat; (2) a dark knit cap; (3) a pantyhose mask; and (4) multiple packs of Newport cigarettes.[3] Prior to trial, Burton moved to suppress all the evidence seized from the residence on the grounds that the warrantless entry was unlawful and

---

1. At the suppression hearing, and at trial, Sergeant Walker testified that the officer stationed on the stairwell, Corporal Alexander, told him that he heard movement inside the house like furniture being moved and that he (Alexander) also said he heard someone inside the house say "there they are." Corporal Alexander testified at trial, however, that the sounds he heard were like people running, not furniture. Also, while testifying that he heard voices inside the house, Corporal Alexander said he could not understand what was being said and specifically denied hearing anyone say anything like "there they are."

2. At the suppression hearing, Sergeant Walker explained that he decided to enter the residence because he felt that someone inside the residence was going to confront them from the upstairs, "a tactical disadvantage," and that he believed someone could be "hiding or concealing evidence, a body, or something along that line."

3. In addition to the items seized inside the house, police also seized a toy gun similar to that used by the robber. This item, however, was found under the seat of a pickup truck parked in the driveway. The truck belonged to the individual pulled out of the bathroom window by police, and that individual purportedly gave consent to the search of the truck.

that the later consent to search was not voluntary. After conducting an evidentiary hearing, the trial court denied the suppression motion. Burton renewed his suppression motion at trial and objected to the seized evidence on the grounds that it was the product of an unlawful warrantless search. The trial court judge overruled the re-urged suppression motion and the individual evidentiary objections.

## DISCUSSION

¶ 8 In this appeal, Burton contends that the warrantless entry and search of his residence was an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution and Article II, § 30 of the Oklahoma Constitution. Burton also argues that the later consent to search was not voluntary because it was given while in custody and was therefore obtained through the exploitation of the prior illegal search. The State does not address the propriety of the warrantless entry and search but relies instead on the after-the-fact consent as its basis for lawfully seizing the evidence.[4]  Additionally, the State argues that even if the search was unlawful and the consent tainted, the violation was harmless given that the remaining evidence by itself was sufficient to support guilty verdicts. Thus, as framed by the parties, the issues presented here are whether the warrantless entry and search was lawful, and if not, whether the illegality was cured by Burton's later-obtained consent to search.

¶ 9 When reviewing a trial court's ruling on a motion to suppress evidence based on a claim of an illegal search and seizure, this Court defers to the trial court's findings of fact unless they are not supported by competent evidence and are therefore clearly erroneous. *Seabolt v. State*, 2006 OK CR 50, ¶ 5, 152 P.3d 235, 237. This Court reviews *de novo* the trial court's legal conclu-

sion that the facts fail to establish a constitutional violation. *Gomez v. State*, 2007 OK CR 33, ¶ 5, 168 P.3d 1139, 1142–43.

¶ 10 Searches and seizures inside a home without a warrant are presumptively unreasonable under the Fourth Amendment to the United States Constitution. *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006); *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *Blackburn v. State*, 1978 OK CR 24, ¶ 21, 575 P.2d 638, 642. A warrant is required to search a person's home unless the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. *Mincey v. Arizona*, 437 U.S. 385, 393–394, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290 (1978). There are "certain specifically established and well delineated exceptions" to the warrant rule. Blackburn, 1978 OK CR 24, ¶ 21, 575 P.2d at 642. Each exception is based on necessity. That is, the nature of the situation must be such that it is not feasible for law enforcement officials to take the time required to secure a search warrant, as to do so might result in the escape of a suspect, or in the loss or destruction of evidence. *Id.* Only "the existence of an emergency, otherwise known as 'exigent circumstances,' permits the law enforcement officer to substitute his judgment for that of a neutral and detached magistrate to the existence of probable cause to make a search." *Id.*

¶ 11 In this case, there was no evidence presented at the suppression hearing or trial suggesting that unless the police entered the residence when they did, Burton would either escape or destroy evidence. To the contrary, the record shows that officers were not particularly concerned that evidence might be destroyed. Specifically, the officer in charge at the scene testified at the suppression hear-

---

4.  The State suggests, but does not actually argue, that the entry was lawful because the officers entered the residence to conduct a protective sweep for officer safety. As Burton points out in his reply brief, however, a protective sweep is not an exception to the warrant requirement. A search incident to a protective sweep would have been proper if the police had entered the resi-

dence lawfully (e.g., to execute an arrest warrant). Once properly inside under authority of an arrest warrant, for example, officers would have been able to "look inside closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990).

ing that the sounds reported coming from inside the house caused him to believe that evidence was only being hidden or concealed.

¶ 12 Additionally, even if the sounds reportedly heard by one officer were those of a furniture barricade being erected inside the house, that in itself is not evidence of an imminently dangerous situation sufficient to justify a warrantless entry to conduct a protective sweep of the premises. To justify a warrantless entry to conduct a protective sweep, "[t]he suspicion of danger must be clear and reasonable in light of all surrounding circumstances [because] [o]fficers of the law are not given free reign to conduct sweep searches on the pretense that a dangerous situation *might* be imminent." *Shepard v. State*, 1988 OK CR 97, ¶ 9, 756 P.2d 597, 603–04, (Brett, P.J. specially concurring (quoting *United States v. Tabor*, 722 F.2d 596, 598 (10th Cir.1983)))(emphasis added). In this instance there was no evidence of imminent danger to police or civilians. Specifically, there was no evidence of hostage-taking, nor was there any indication of danger to the police or bystanders located outside the residence, nor was there any evidence that someone inside the house had been injured or was being threatened. Furthermore, there was no possibility of escape because the residence was surrounded by police. Lastly, this was not a hot pursuit situation. Police had not pursued Burton directly from the crime scene, but instead went to his house hours after the latest robbery based on their suspicions that he may have been involved.

¶ 13 When the State seeks to rely on evidence discovered through a warrantless search, the State carries the burden of showing that the circumstances of the situation fell within one of the specific exceptions to the warrant requirement. *Coolidge*, 403 U.S. at 455, 91 S.Ct. at 2032. *See also Case v. State*, 1974 OK CR 27, ¶ 6, 519 P.2d 523, 524 ("once a defendant establishes that evidence was seized as a result of a search without a warrant, the burden shifts to the State to show that the search is reasonable because it falls within the few specifically established and well delineated exceptions to the Fourth Amendment requirement that a search have the prior approval of a judge or magistrate").

This record is devoid of evidence that any recognized exigency existed at the time officers entered Burton's home. The resulting warrantless search was therefore unlawful.

¶ 14 Apparently anticipating this result, the State focuses its argument on its claim that any illegality in the warrantless entry and search was cured by Burton's later consent to search the property. Where the State claims consent as an exception to the warrant requirement, the proof offered by the State must be clear and convincing that the waiver was a free and voluntary act. *Case*, 1974 OK CR 27, ¶ 7, 519 P.2d at 524. Here, officers testified at the suppression hearing and at trial that Burton did not appear to be under the influence of drugs or alcohol. They also testified that he was not overtly threatened or coerced to sign the search waiver. The record also shows, however, that Burton was taken from the second floor attic in his home, placed in handcuffs, and taken to a police car where he was then asked to sign the search waiver. Having passed the officers deployed throughout his home while being ushered to the police car, it is a fair inference that Burton signed the form with full knowledge that police were already positioned throughout his house with incriminating evidence in plain view. Without any appreciable lapse of time between being taken into custody and being asked to consent to a search that essentially had already been completed, and without any other intervening event to lessen the coercive grip of being held *incommunicado* in a police car, this evidence is not clear and convincing that Burton's consent was given freely and voluntarily. It seems unreasonable, therefore, to infer from this record that Burton's after-the-fact consent to search was sufficiently an act of free will to purge the primary taint of the unlawful entry to his residence. *Cf. Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963). *See also Bynum v. State*, 1971 OK CR 389, ¶ 14, 490 P.2d 531, 534 ("[a] defendant's conviction may not be based on the exploitation of the illegal action of the State").

¶ 15 Nevertheless, even where this Court finds that a search was unlawful, it does not automatically reverse. Only where a conviction is based solely on evidence obtained by means of an unauthorized search and seizure and is admitted over defendant's objection will this Court reverse. If there is evidence sufficient to sustain a conviction in the absence of the unlawfully obtained evidence, the wrongful seizure may be found harmless and the conviction sustained. *Fite v. State,* 1993 OK CR 58, ¶ 19, 873 P.2d 293, 297.

¶ 16 The trial record shows that the convictions in this instance were based on more evidence than that seized from Burton's home. For example, a witness to one of the robberies saw part of Burton's face and identified him from a police-provided photo spread. Additionally, there was surveillance video of each robbery, one of which showed a part of the robber's face. However, while not necessarily dispositive evidence of guilt in itself, the evidence seized from Burton's home provided an especially damning linkage to both robberies by connecting clothing worn by the robber and cigarettes taken by the robber to Burton. In the absence of this evidentiary linkage, Burton's presence at the robbery sites would be much less certain, but arguably still sufficiently proven by the remaining evidence to sustain one or both convictions. Under these circumstances, it is not possible to conclude that the wrongfully seized evidence had no effect on the verdict. Therefore, the case must be remanded with the evidence seized from Burton's residence excluded on retrial.

¶ 17 Because we remand for a new trial on the search issue, we do not address Burton's remaining claims. We note, however, that in connection with his claim of ineffective assistance of trial counsel, Burton has moved for an evidentiary hearing and supplementation of the record. Because our grant of relief moots this claim, we deny the motions.

## DECISION

¶ 18 The Judgment and Sentence of the District Court is **VACATED.** Burton's motions for evidentiary hearing and supplementation of the record are **DENIED.** The case is **REMANDED** for new trial. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2009), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, P.J. and CHAPEL, J. and LEWIS, J.: concur.

LUMPKIN, J.: concur in result.