STEWART v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STEWART v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STEWART v. STATE
2019 OK CR 6
442 P.3d 158
Case Number: F-2017-622
Decided: 05/16/2019
DAKOTA WILLIAM STEWART, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2019 OK CR 6, 442 P.3d 158

 

 

O P I N I O N

ROWLAND, JUDGE:

¶1 Appellant Dakota William Stewart appeals his Judgment and Sentence from the District Court of Carter County, Case No. CF-2016-330, for two counts of First Degree Manslaughter (Counts 1 & 2) in violation of 21 O.S.2011, § 711, and one count of Unlawful Possession of a Controlled Dangerous Substance (Metham-phetamine) (Count 3) in violation of 63 O.S.Supp.2012, § 2-402. The Honorable Dennis R. Morris, District Judge, presided over Stewart's jury trial and sentenced him, in accordance with the jury's verdict, to twenty-five years imprisonment on each of Counts 1 and 2 and ten years imprisonment on Count 3 with the sentences to be served consecutively. Stewart appeals contesting only the warrantless compulsory seizure of his blood and subsequent admission of his blood test results that revealed the presence of drugs. We find relief is not required and affirm the Judgment and Sentence of the district court.

FACTS

¶2 The facts of this case are not in dispute. Stewart lost control of his Chevy Avalanche while driving northbound on U.S. Highway 77 in Carter County on May 28, 2015. His car came to rest in the opposite lane of traffic where a van driven by Gerald Letkiewicz struck him broadside. Both Letkiewicz and Stewart's front seat passenger, Justin Skinner, died at the crash site. Though Stewart and his three other passengers sustained injuries, they survived. Stewart's injuries were critical and he was flown to an Oklahoma City trauma center for emergency medical treatment where he remained in a coma for several weeks. Shortly after Stewart's arrival at the hospital, and about three hours after the fatal crash, a registered nurse, acting at the direction of a state trooper without a search warrant or Stewart's consent, drew a sample of his blood. Subsequent testing revealed the presence of methamphetamine and marijuana in Stewart's system. Meanwhile, troopers found methamphetamine, scales, smoking pipes, and pills while looking for identification inside Stewart's car at the crash site.

ANALYSIS

¶3 Stewart argues the warrantless, nonconsensual seizure of his blood and subsequent admission of its chemical analysis at trial violated his state and federal constitutional guarantees against unreasonable searches and seizures. U.S. Amend IV; Okla.Const. Art. 2, § 30. The district court denied his motion to suppress, ruling Title 47 O.S.2011, § 10-104(B) permitted the seizure of his blood without any search warrant or showing of probable cause and exigent circumstances. Because that statute and its authorization for the warrantless seizure of a suspect's blood in serious vehicle accidents was explicitly upheld by this Court in Cripps v. State, 2016 OK CR 14, 387 P.3d 906, cert. denied, ___U.S.___, 137 S.Ct. 2186, 198 L.Ed.2d 254 (2017), he urges the overruling of that case.

A.

¶4 In Schmerber v. California, 384 U.S. 757, 758-60, 86 S.Ct. 1826, 1829, 16 L.Ed.2d 908 (1966), a defendant convicted of driving under the influence of alcohol challenged the warrantless seizure and testing of his blood that was performed at the direction of police while he was being treated at a hospital for injuries suffered in a vehicle crash. The arresting officer smelled the odor of alcohol and observed other signs of intoxication on the defendant at the crash scene, and again at the hospital within two hours of the crash. Schmerber, 384 U.S. at 768-69, 86 S.Ct. at 1835. The Supreme Court upheld the warrantless seizure of the blood sample based in part upon the body's natural dissipation of alcohol. Id., 384 U.S. at 770-71, 86 S.Ct. at 1835-36. The Supreme Court stated:

The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

Id.

¶5 In Missouri v. McNeely, 569 U.S. 141, 145, 133 S.Ct. 1552, 1556, 185 L. Ed.2d 696 (2013), the Supreme Court made clear that the body's natural dissipation of alcohol does not itself create a per se rule of exigency which permits a warrantless search and seizure of a suspect's blood in every drunk-driving case. Rather, just as in all other Fourth Amendment contexts, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." McNeely, 569 U.S. at 156, 133 S.Ct. at 1563. This pronouncement means that in addition to having probable cause to support the search, police must also obtain a warrant unless there is some exigent circumstance where "the needs of law enforcement [are] so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." Id., 569 U.S. at 148-49, 133 S.Ct. at 1558 (quoting Kentucky v. King, 563 U.S. 452, 460, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011)).

B.

¶6 Title 47, Section 10-104(B) of the Oklahoma Statutes reads:

Any driver of any vehicle involved in an accident who could be cited for any traffic offense where said accident resulted in the immediate death or great bodily injury, as defined in subsection B of Section 646 of Title 21 of the Oklahoma Statutes, of any person shall submit to drug and alcohol testing as soon as practicable after such accident occurs. The traffic offense violation shall constitute probable cause for purposes of Section 752 of this title and the procedures found in Section 752 of this title shall be followed to determine the presence of alcohol or controlled dangerous substances within the driver's blood system.

¶7 This statute "creates a per se rule requiring nonconsensual blood testing of a driver involved in an accident who could be cited for a traffic offense, where the accident involves either a fatality or great bodily injury of any person, including the driver." Cripps, 2016 OK CR 14, ¶ 8, 387 P.3d at 909 (emphasis in original).

¶8 The Cripps Court held that because 47 O.S.2011, § 10-104(B) applied only when there was an accident involving death or great bodily injury, its per se rule survived McNeely. Cripps, 2016 OK CR 14, ¶ 8, 387 P.3d at 909. We now find that this analysis and construction of Section 10-104(B) cannot withstand scrutiny under the Fourth Amendment and we overrule Cripps as well as Bemo v. State, 2013 OK CR 4, 298 P.3d 1190, Sanders v. State, 2002 OK CR 42, 60 P.3d 1048, and Guest v. State, 2002 OK CR 5, 42 P.3d 289, insofar as these cases are inconsistent with this opinion.

1.

¶9 In Cripps, we found Section 10-104(B) beyond the reach of McNeely because its per se rule was different from the Missouri rule struck down in McNeely. We explained:

The exigent circumstance justifying the per se rule in § 10--104(B) is the existence of great bodily injury or a fatality to persons including the driver. Put another way, § 10--104(B) does not depend solely on the dissipation of alcohol in the bloodstream over time as an exigent circumstance . . . . The majority in McNeely rejected the claim that states needed a per se rule based on the dissipation of alcohol in the blood in order to promote enforcement of laws against drunk driving. The per se rule found unconstitutional in McNeely is simply a different rule from the per se rule in § 10--104(B), and the difference is material.

Cripps, 2016 OK CR 14, ¶ 8, 387 P.3d at 909. Undoubtedly driving under the influence is a significant public safety problem and the enactment of statutes like Section 10-104(B) seek to assist law enforcement in uncovering evidence for prosecution of those who drive under the influence resulting in tragic consequences. The blanket rule in Section 10-104(B), however, like the dissipation of alcohol in the bloodstream in McNeely, substitutes one per se rule of exigency for another. This distinction is simply at odds with the central point of McNeely that no such blanket rule will satisfy the Fourth Amendment requirement of individualized consideration of the existence of probable cause and exigent circumstances to justify the taking of a blood sample from a driver without a warrant.

2.

¶10 Indeed, Section 10-104(B) goes even further than the per se rule rejected in the McNeely case. It provides not only a per se rule of exigency in such cases, but also a per se finding of probable cause, completely eliminating any role of the magistrate in ruling upon probable cause or exigency either before or after the seizure of a suspect's blood. This departs from a foundational Fourth Amendment principle which requires probable cause be determined by a neutral and detached magistrate on a case-by-case basis.

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

Johnson v. United States, 333 U.S. 10, 13--14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). While Section 10-104(B) does not delegate the finding of probable cause to law enforcement officers, its inherent pronouncement of probable cause in an entire category of cases has impermissibly dispensed with the necessity of an individualized assessment of probable cause by a magistrate on a case-by-case basis.

¶11 In Shadwick v. City of Tampa, 407 U.S. 345, 352, 92 S.Ct. 2119, 2123-24, 32 L.Ed.2d 783 (1972), the Supreme Court upheld the review and issuance of search warrants by a municipal court clerk employed by the judicial branch, but voiced doubt about the constitutionality of such review being performed by non-judicial branch personnel. "Many persons may not qualify as the kind of 'public civil officers' we have come to associate with the term 'magistrate.' Had the Tampa clerk been entirely divorced from a judicial position, this case would have presented different considerations." Id., 407 U.S. at 352, 92 S.Ct. at 2124. See also, United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div., 407 U.S. 297, 317, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972)("The Fourth Amendment does not contemplate the executive officers of Government as neutral and disinterested magistrates.")

¶12 An analogous attempt to legislate a Fourth Amendment standard was at issue in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), wherein the Supreme Court considered New York's "stop and frisk" statute, which allowed police to detain any person whom they reasonably suspected of committing certain crimes. Declining the parties' invitation to rule on whether the challenged statute was facially constitutional, the Court instead focused solely on whether the facts known to the officer at the time of a given stop constituted reasonable suspicion to detain.

The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case....No search required to be made under a warrant is valid if the procedure for the issuance of the warrant is inadequate to ensure the sort of neutral contemplation by a magistrate of the grounds for the search and its proposed scope, which lies at the heart of the Fourth Amendment....

The question in this Court upon review of a state-approved search or seizure 'is not whether the search (or seizure) was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.'

(citations omitted). Sibron, 392 U.S. at 59 & 61, 88 S.Ct. at 1901-02. Similarly, in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court rejected a facial challenge to the constitutionality of a statute permitting police to use deadly force to apprehend all fleeing felons. Instead, the majority held that the statute was constitutional as applied to serious crimes where there was probable cause to believe the suspect posed a danger to others and the use of deadly force was necessary to prevent the suspect's escape. Garner, 471 U.S. at 11-12; 105 S.Ct. at 1701.

C.

¶13 Section 10-104(B) gives no consideration to the "concrete factual context of the individual case," nor does it allow for "neutral contemplation by a magistrate of the grounds for the search." Sibron, 392 U.S. at 59; 88 S.Ct. at 1901. If the Legislature may substitute a fatality or serious injury vehicle crash for a judicial finding of probable cause, it could substitute most any other factual scenario as well and the requirement of a neutral and detached magistrate becomes nothing more than a default position in the absence of legislative action. "The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." Schmerber, 384 U.S. at 770, 86 S.Ct. at 1835.

¶14 Following the Supreme Court's lead in Sibron and Garner, we stop short of holding that Section 10-104(B) is unconstitutional on its face, but we hold that more than simple compliance with the statute is required in order to justify the warrantless seizure of blood from an intoxicated driving suspect. There must be an individualized determination of probable cause by a magistrate based upon the totality of the facts of each case, and the issuance of a search warrant, unless some exigent circumstance(s) renders it impractical to obtain a warrant beforehand.[1] In those cases where police act without a warrant, a magistrate will rule upon the existence of probable cause and exigent circumstances, if and when the seizure is later challenged through a motion to suppress.[2] These are the same, familiar Fourth Amendment principles applied in nearly every other Fourth Amendment search and seizure context.

D.

¶15 In the case now before us, the record shows troopers found drugs and drug paraphernalia in Stewart's vehicle at the crash site, evidence highly significant to the question of whether there was probable cause to draw Stewart's blood. The record also shows that neither the investigating officers nor prosecutors sought to rely upon that evidence for probable cause, instead and understandably relying upon the categorical probable cause rule of Section 10-104(B) as interpreted by Cripps. This resulted in hardly any attention to developing a thorough factual record of these particular facts below and, as Stewart correctly points out, it is not clear when the drugs were discovered relative to the taking of his blood at the hospital in Oklahoma City.

¶16 Whether or how much it matters when the actual discovery of the drug evidence was made in the course of these events need not detain us long, because the exclusionary rule simply does not apply to Fourth Amendment violations where the officers involved relied on a state statute which they are entitled to assume is constitutional. Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). The Court in Krull explained

The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law.

Id., 480 U.S. at 349--50, 107 S.Ct. at 1167. The purpose of the exclusionary rule is to deter police misconduct and where, as here, there is no demonstrable police misconduct there is nothing to deter by suppressing evidence. The trooper's reliance in this case on Section 10-104(B) as the basis for drawing Stewart's blood was objectively reasonable and unquestionably done in good faith. See State v. Sittingdown, 2010 OK CR 22, ¶¶ 17-18, 240 P.3d 714, 718. Had the record been further developed, it is highly likely it would have shown the existence of probable cause and exigent circumstances sufficient to justify Stewart's warrantless, nonconsensual blood draw. Regardless, the fruits of a search and seizure conducted pursuant to a state statute need not be suppressed even if the statute is subsequently invalidated if the officer, as in this case, acted in objectively reasonable reliance upon it and abided by its terms. See id., 2010 OK CR 22, ¶ 17, 240 P.3d at 718. For these reasons, we find the warrantless, nonconsensual taking of Stewart's blood and subsequent admission of its chemical analysis warrants no relief in this case.

DECISION

¶17 The Judgment and Sentence of the district court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2019), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT
OF CARTER COUNTY

THE HONORABLE DENNIS R. MORRIS, DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL
 
 
 APPEARANCES ON APPEAL
 
 
 
 
 JAMES I. ENGLISH, III
 ATTORNEY AT LAW
 5 S. COMMERCE, SUITE 9
 ARDMORE, OK 73401
 COUNSEL FOR DEFENDANT
 
 
 MICHAEL D. MOREHEAD
 APPELLATE DEFENSE
 COUNSEL
 P.O. BOX 926
 NORMAN, OK 74119
 COUNSEL FOR APPELLANT
 
 
 
 
 CRAIG LADD
 DISTRICT ATTORNEY
 20 B STREET SW, ROOM 202
 ARDMORE, OK 73401
 COUNSEL FOR STATE
 
 
 MIKE HUNTER
 ATTORNEY GENERAL
 OF OKLAHOMA
 AMBER MASTERS
 ASSISTANT ATTORNEY
 GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

OPINION BY: ROWLAND, J.
LEWIS, P.J.: Concur in Results
KUEHN, V.P.J.: Concur in Part and Dissent in Part
LUMPKIN, J.: Concur
HUDSON, J.: Specially Concur

FOOTNOTES

[1] As the Supreme Court noted in McNeely, the use of telephonic or electronic search warrants is especially useful in cases like this where the probable cause is relatively simple. McNeely, 569 U.S. at 154, 133 S.Ct. at 1562. Title 22 O.S.Supp.2014, § 1225 permits the use of telephones, e-mail, or any similar electronic means of communicating with the magistrate for issuance of a warrant.

[2] Today's opinion does not hold that the fact of a fatality or serious injury crash cannot support a finding of probable cause to seize blood from a driver. Indeed, a law enforcement officer with substantial training and experience in vehicle collision investigation, establishing a crash had no apparent benign cause, may be found sufficient to issue a warrant or, coupled with exigent circumstances, to support a warrantless seizure of the suspect's blood. The point is that such probable cause determinations must be made on a case specific basis by a neutral and detached magistrate.

LEWIS, PRESIDING JUDGE, CONCURS IN RESULTS:

¶1 The majority opinion determines that a legislative act cannot supplant an independent finding of facts supporting probable cause necessary for a search, and still finds 21 O.S.2011, § 10-104(B) constitutional on its face.

¶2 The opinion cites Tennessee v. Garner[1] to support its holding that the statute is not unconstitutional on its face, but may be applied in a constitutional manner. The holding of Garner is distinguishable. In Garner the United States Supreme Court was faced with a statute that restated the common law rule allowing an officer to use any necessary force, including deadly force, to affect the arrest of a felon. Garner, 471 U.S. at 12-13 and 16, 105 S.Ct. at 1702 and 1703-04. The Court reasoned that the common law rule was unreasonably anachronistic. Id., 471 U.S. at 13-15, 105 S.Ct. at 1702-03. The Court, however, found that the statute could be applied constitutionally by a showing that the fleeing felon posed a threat. Id., 471 U.S. at 11-12, 105 S.Ct. at 1701.

¶3 In the present case, Section 104(B) is either constitutional on its face or it is unconstitutional. The majority opinion creates more confusion by upholding the statute and adding additional requirements to comply with constitutional standards.[2] If the majority feels the statute is unconstitutional on its face, they should just say so.

¶4 I find the statute reasonable under the Fourth Amendment and in compliance with the standards spelled out in Sibron v. New York.[3] The Fourth Amendment to the United States Constitution is practically identical to Article II, Section 30 of the Oklahoma Constitution and this Court has held that Article II, Section 30 gives no greater protection than the Fourth Amendment. Long v. State, 1985 OK CR 119, ¶ 6, 706 P.2d 915, 916-17.

¶5 The opinion holds that compliance with the statute, plus an individual determination of probable cause based on the totality of the circumstances, and a warrant or an exception to the warrant requirement would make the statute constitutional. This finding is as if the statute never existed, for this is the test for all Fourth Amendment cases. See Smith v. State, 2018 OK CR 4, ¶ 5, 419 P.3d 257, 259-60; Hallcy v. State, 2007 OK CR 2, ¶ 10, 153 P.3d 66, 68-69.[4]

¶6 The test for probable cause is not exact. Individualized determinations are unnecessary in cases such as the ones envisioned by this statute. This Court recognizes that,

Probable cause is a flexible, common-sense standard, requiring that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or useful as evidence of a crime; it does not demand any showing that such a belief be correct. [Texas v.] Brown, 460 U.S. [730] at 742, 103 S.Ct. [1535] at 1543, [75 L.Ed.2d 502 (1983)]; Bland v. State, 2000 OK CR 11, ¶ 45, 4 P.3d 702, 717. A practical, nontechnical probability based on factual and practical considerations that incriminating evidence is involved is all that is required. See Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed.2d 1879 (1949).

Hallcy, 2007 OK CR 2, ¶ 10, 153 P.3d at 69.

¶7 Under the statute, an officer is required to obtain blood only when the driver has violated a traffic law and is involved in an accident resulting in death or great bodily injury. 47 O.S.2011, § 10-104(B); see also 47 O.S.2011, § 753 ("such test otherwise authorized by law may be made in the same manner as if a search warrant had been issued for such test or tests"). These circumstances involve only a narrow set of facts. Cripps v. State, 2016 OK CR 14, ¶ 8, 387 P.3d 906, 909.

¶8 I further find that the statute does not infringe on the expectation of privacy that society is prepared to recognize as reasonable when utilizing the balancing test that was reiterated in Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 625, 109 S.Ct. 1402, 1417-18, 103 L.Ed.2d 638 (1989).

¶9 Searches based on warrants are ideal, because warrant requirements ensure that intrusions are not the random or arbitrary acts of government agents. Skinner, 489 U.S. at 621-22, 109 S.Ct. at 1415-16. Warrants assure citizens that the intrusion is authorized by law and it is narrowly limited in objectives and scope. Id., 489 U.S. at 622, 109 S.Ct. at 1416.

¶10 The justifications supporting blood draws in cases outlined in this statute are narrowly defined and there are virtually no facts for a neutral magistrate to evaluate in light of the standardized nature of the tests and the minimal discretion vested in those charged with enforcement. This well written statute is so narrowly drawn so as to be the equivalent of neutral review by a magistrate. Indeed, any reasonable magistrate faced with the facts outlined in the statute would find that probable cause exists for the issuance of a warrant for the taking of blood from the driver. The facts outlined in the statute support practical, nontechnical probabilities supporting a search for incriminating evidence. The limited facts outlined in the statute are sufficient.

¶11 The opinion relies heavily on Missouri v. McNeely, 569 U.S. 141, 133 S.Ct. 1552, 185 L. Ed.2d 696 (2013). As stated in Cripps, McNeely is distinguishable. Cripps, 2016 OK CR 14, ¶ 8, 387 P.3d at 909. I find no basis for overruling Cripps and its analysis of the McNeely case.

¶12 Under our statute, probable cause exists, according to the statute, if (1) a driver is involved in a traffic accident, (2) the driver could be cited for any traffic offense, and (3) the accident resulted in immediate death or great bodily injury, as defined in subsection B of Section 646 of Title 21 of the Oklahoma Statutes.[5] The procedure for determining the level of alcohol or controlled substances shall be determined by following 47 O.S.2011, § 752 (the testing procedures for breath, blood or urine).

¶13 In Cripps, this Court held that the dissipation of blood as well as the involvement in an accident involving immediate death or great bodily injury created the exigency necessary to overcome the warrant requirement. Cripps, 2016 OK CR 14, ¶ 8, 387 P.3d at 909.

¶14 This Court has held that searches and seizures under these circumstances are reasonable because the statute properly provides probable cause and spells out an exigency that is common in nearly all of these situations. This Court should affirm Cripps and confirm that the case by case analysis has been undertaken by the legislature in determining that accidents involving death or great bodily injury as well as the dissipation of intoxicants in the blood stream provide sufficient exigent circumstances as well as probable cause to take a driver's blood.

¶15 The seizure of blood from a person involved in an accident where the person could be cited for a traffic violation and where the accident results in immediate death or great bodily injury is reasonable under the Fourth Amendment to the United States Constitution and Article II, Section 30 of the Oklahoma Constitution. There is no need to save this case based on a good faith exception. This writer, therefore, would affirm the judgment and sentence on the grounds that the statute does not offend search and seizure jurisprudence.

FOOTNOTES

[1] 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[2] The only logical reason to save the statute is in hopes that the United States Supreme Court will find similar statutes constitutional and this Court can reverse this holding.

[3] 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

[4] In the present case an Oklahoma State Highway Patrol trooper found the evidence of methamphetamine use while searching for identification of the parties involved after they had been removed from the vehicles; more than likely prior to the blood draw. Further, blood was taken after Appellant arrived in Oklahoma City. This vehicle collision occurred around 9:00 a.m., it appears the first trooper arrived at 9:20, and the blood was taken around 12:14 p.m. It appears that the troopers had probable cause for a warrant and plenty of time to obtain a warrant before the blood draw had they not relied on this statute.

[5] "'Great bodily injury' means bone fracture, protracted and obvious disfigurement, protracted loss or impairment of the function of a body part, organ or mental faculty, or substantial risk of death." 21 O.S.2011, § 646(B).

KUEHN, V.P.J., CONCURRING IN PART/DISSENTING IN PART:

¶1 Appellant's only claim on appeal is that 47 O.S.2011, § 10-104(B) violates the protections of the Fourth Amendment. I agree with this assertion and believe the statute should be declared unconstitutional. I believe the results of Appellant's blood test should have been suppressed, because while police had probable cause to suspect Appellant had been driving under the influence of intoxicants, the State failed to show that exigent circumstances justified taking a sample of his blood without a warrant. Nevertheless, the remaining evidence overwhelmingly supports Appellant's manslaughter convictions on both theories addressed by the jury's verdicts, and admission of the blood-test results was harmless beyond a reasonable doubt. For these reasons, I concur in part and dissent in part.

I.

¶2 Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances. Missouri v. McNeely, 569 U.S. 141, 156, 133 S.Ct. 1552, 1563. The "overarching test for judging the existence of probable cause is whether a reasonably prudent police officer, considering the totality of the circumstances confronting him and drawing from his experience, would be warranted in the belief that an offense has been or is being committed." Hallcy v. State, 2007 OK CR 2, ¶ 10, 153 P.3d 66, 68--69.

¶3 The statute at issue here provides, in relevant part:

Any driver of any vehicle involved in an accident who could be cited for any traffic offense where said accident resulted in the immediate death or great bodily injury ... of any person shall submit to drug and alcohol testing as soon as practicable after such accident occurs. The traffic offense violation shall constitute probable cause for purposes of Section 752 of this title and the procedures found in Section 752 of this title shall be followed to determine the presence of alcohol or controlled dangerous substances within the driver's blood system.

47 O.S.2011, § 10-104(B) (emphasis added).

¶4 The first quoted sentence places an obligation on motorists to submit to testing for intoxicants in certain situations. It does not purport to confer any authority on police to administer such tests without (1) a warrant, (2) the motorist's consent, or (3) some other recognized exception to a warrant, such as probable cause plus exigent circumstances. I find nothing constitutionally objectionable in this text.

¶5 The second quoted sentence, however, is problematic. For a warrantless nonconsensual search to be constitutionally reasonable, the government must show probable cause and exigent circumstances, and both must be based on the particular circumstances of the case. Burton v. State, 2009 OK CR 10, ¶ 10, 204 P.3d 772, 775. Section 10-104(B) dispenses with both requirements. It declares that certain facts establish "probable cause," and ignores the exigent-circumstances requirement entirely. Enactment of § 10-104(B) reflects our Legislature's justified concern over the horrific toll that intoxicated drivers inflict on our state's roadways. Even so, the provision violates the Fourth Amendment because it dispenses with individualized determinations of probable cause, as well as the requirement of exigent circumstances.[1]

¶6 Interestingly, the State here does not argue that the traffic citation alone established probable cause to take a blood sample; rather, the State argues (correctly) that the totality of the circumstances established probable cause. The plain language of § 10-104(B) authorized the troopers to obtain a blood sample because Appellant was involved in a traffic fatality accident. That per se rule regarding probable cause is what renders the statute unconstitutional, and it would be no less infirm without McNeely. Every other state that has considered this question has reached the same conclusion.[2] I agree that Cripps v. State, 2016 OK CR 14, 387 P.3d 906; Bemo v. State, 2013 OK CR 4, 298 P.3d 1190; and Guest v. State, 2002 OK CR 5, 42 P.3d 289, should be overruled to the extent they hold otherwise.

¶7 I also believe this Court should declare § 10-104(B) unconstitutional, and like Judge Lewis, I am puzzled why the Majority cannot bring itself to do so. While we must presume statutes are constitutional, and should always try to interpret them with that presumption in mind, see State v. Howerton, 2002 OK CR 17, ¶ 16, 46 P.3d 154, 157, we also cannot ignore the plain, unambiguous language of a statute, or add words to make it say something it does not. "A statute must be held to mean what it plainly expresses and no room is left for construction and interpretation where the language employed is clear and unambiguous." Johnson v. State, 2013 OK CR 12, ¶ 10, 308 P.3d 1053, 1055 (citation omitted). "We must hold a statute to mean what it plainly expresses and cannot resort to interpretive devices to fabricate a different meaning." State v. Farthing, 2014 OK CR 4, ¶ 5, 328 P.3d 1208, 1210.

¶8 Section 10-104(B) unambiguously declares that a certain set of facts shall authorize a blood draw. Nothing else is required. The Majority makes it perfectly clear that the statute is toxic. The statute "creates a per se rule requiring nonconsensual blood testing" when a particular set of circumstances exist (Slip Op. at 6). The only difference with Missouri v. McNeely (discussed in the Majority Opinion) is that our statute "substitutes one per se rule of exigency for another" (Slip Op. at 7). In fact, our statute "goes even further" by establishing "a per se finding of probable cause" (emphasis added), eliminating the magistrate's role "completely" (Slip Op. at 8). The Majority correctly concludes that the statute "gives no consideration" to the particular facts of the case (Slip Op. at 11).

¶9 Why, then, do we not declare the statute unconstitutional? In avoiding the issue, the Majority quotes Sibron v. New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 1900-01: "The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case." (Slip Op. at 10) I believe this is a classic case of category confusion. While every search is different, the language of a statute does not change to fit the facts. The validity of a particular search, under the Fourth Amendment's requirement that the search be "reasonable," is one thing; but the validity of a statute purporting to dispense with any fact-specific determinations, by a magistrate or anyone else, is quite another. Any statute is constitutional if you read enough into it.

¶10 What's more, in Sibron the Court described inquiry into the constitutionality of the law at issue there as "abstract and unproductive," because its provisions were "extraordinarily elastic." Sibron, id. Indeed, the Sibron court contrasted the law before it with one "which purports to authorize the issuance of search warrants in certain circumstances." Id. (emphasis added). And that is exactly what we have here. The text of § 10-104(B) can hardly be called "elastic," and unlike the provision in Sibron, it does purport to categorically authorize the seizure of evidence in certain circumstances.[3]

¶11 The Majority concludes that "more than simple compliance with the statute is required" -- there "must" be an individualized determination of probable cause (Slip Op. at 12). But that is precisely what the statute does not require: an individualized determination of probable cause. To ensure that police have clear instructions on what is and is not permissible, we should declare § 10-104(B) unconstitutional.[4]

¶12 Regardless of § 10-104(B)'s problems, I believe under the particular facts of this case, there was probable cause to believe Appellant was under the influence of intoxicants -- specifically, the nature of the accident coupled with the methamphetamine and smoking paraphernalia in his truck at the crash site. However, the State failed to establish the second part of the equation: that the exigencies of the situation made time of the essence, such that any delay necessitated by seeking a search warrant would jeopardize the ability to preserve the evidence. Absent exigent circumstances, the blood draw violated the Fourth Amendment.[5]

II.

¶13 At the end of the day, however, the illegality of the blood draw is of no help to Appellant. The State offered two independent misdemeanors on which the jury could predicate convictions for Misdemeanor Manslaughter: Driving Under the Influence of Intoxicants, and Driving without a License. The trial testimony showed (1) the accident appeared to have been caused by Appellant, who veered his truck into oncoming traffic on a state highway; (2) Appellant smoked methamphetamine with a friend hours before the accident; (3) at that time, Appellant told the friend he had been awake for several days already; (4) at trial, Appellant admitted having been awake for at least one full day before the accident, due to the effects of methamphetamine use in the preceding days; (5) methamphetamine and smoking gear were found in Appellant's truck after the crash; and, finally, (6) Appellant admitted he had never held a valid driver's license. On these facts alone, independent of the blood-test results, a rational juror could conclude that Appellant was guilty of manslaughter under either theory -- and the jury found him guilty under both. Admission of the blood test was harmless beyond a reasonable doubt, and Appellant's convictions should be affirmed. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Wilson v. State, 1994 OK CR 5, ¶ 6, 871 P.2d 46, 49 (constitutional error requires no relief if there is no reasonable probability that it contributed to the result).

FOOTNOTES

[1] In McNeely, the fact that police had probable cause to justify taking the defendant's blood was not at issue. McNeely dealt with a per se theory in the exigent-circumstances part of the equation, but the principle that the reasonableness of warrantless searches must always be determined on a case-by-case basis was in place long before McNeely.

[2] See, e.g., State v. Blank, 90 P.3d 156, 161-62 (Alaska 2004) (interpreting statute to incorporate requirements of Schmerber v. California); State v. Quinn, 218 Ariz. 66, 68, 178 P.3d 1190 (Ct.App.2008) (statute cannot authorize blood draw following traffic accident involving serious injury or death absent finding of probable cause that driver was impaired); Cooper v. State, 277 Ga. 282, 291, 587 S.E.2d 605 (2003) ("[T]o the extent [the statute] requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities regardless of any determination of probable cause, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions."); King v. Ryan, 153 Ill.2d 449, 463--64, 180 Ill.Dec. 260, 607 N.E.2d 154 (1992) (for blood test, officer needs more than probable cause to believe driver was partially at fault in an injury/fatality accident); Hannoy v. State, 789 N.E.2d 977, 992 (Ind.App.2003) (police may forcibly obtain blood sample from driver without warrant or consent, but only when they have probable cause to believe driver was intoxicated); State v. Roche, 681 A.2d 472, 472 n. 1, 475 (Me.1996) (statute prohibits use of evidence from administrative blood draw in criminal prosecution unless State can establish independent probable cause that driver was impaired); McDuff v. State, 763 So.2d 850, 855 (Miss.2000) ("[T]he tragic fact that a fatality arises out of a motor vehicle accident is in no way, standing alone, an indicator that alcohol or drugs were involved"); Com. v. Kohl, 532 Pa. 152, 164, 615 A.2d 308 (1992) (drawing blood sample pursuant to implied consent law from driver who had been involved in automobile accident violated Fourth Amendment, where driver was not under arrest and police lacked probable cause to believe driver was operating vehicle under the influence); State v. Declerck, 49 Kan. ApP.2d 908, 914-22, 317 P.3d 794, 800-04 (2014)(finding statute similar to Oklahoma's, with same per se probable cause finding, unconstitutional).

[3] As another instance where the Supreme Court avoided the issue of a statute's facial invalidity, the Majority cites Tennessee v. Garner, 471 U.S. 1, 11-12, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). At issue in Garner was what degree of force was constitutionally permissible to apprehend a fleeing suspect. The statute at issue provided: "If, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest." In a brief paragraph with no citation to authority, the Court held that while deadly force was not constitutionally permissible in every case, the statute could be applied to situations where such force was warranted. I believe the language at issue in the case before us is rather more direct. If the statute in Garner had read, "A suspect's flight, after warnings to stop, shall justify the officer in killing him," the Court might have worded its opinion differently.

[4] While some take the position that the statute can be "applied in a constitutionally sound matter" by considering the facts of each particular case, see Cripps, 2016 OK CR 14, 387 P.3d 906 (Lumpkin, V.P.J., concurring in result at ¶ 13), I find that sleight of hand unpersuasive. A statute whose constitutional validity hinges on facts that its express language does not require is not only useless, but dangerous. The separate opinions in Cripps felt it imperative to raise the red flag and warn police not to follow the literal language of § 10-104(B). See Cripps, 2016 OK CR 14, 387 P.3d 906 (Lumpkin, V.P.J., concurring in result at ¶ 15) (warning police to rely on Supreme Court jurisprudence, rather than "the carte blanche language in our statute"); and id. (Hudson, J., concurring in part and dissenting in part at ¶ 11) ("We leave the bench, bar and public wondering what the law truly is and, in the process, leave the fate of DUI-related vehicular accidents involving immediate death or injuries hanging in the balance"). Yet with Cripps out of the way, the Court now seems unusually timid about the law that Cripps sought to interpret. Failing to declare § 10-104(B) unconstitutional, to the extent it replaces true case-by-case analysis with a pre-packaged concept of probable cause, just perpetuates uncertainty in the law.

[5] On appeal, the State argues that police did not have time to seek a warrant. After the crash, Appellant was transported to a hospital in Oklahoma City, some two hours away. Officers in Oklahoma City were enlisted to have Appellant's blood drawn by a nurse soon after his arrival. The blood sample was taken over three hours after the accident. We appreciate the stressful and dangerous situations that our peace officers find themselves in every day, and we acknowledge that they must make many important decisions at crime scenes without the benefit of hindsight. Here, however, we believe the officers had sufficient time to seek at least telephonic approval of the blood draw from a magistrate, while Appellant was en route to Oklahoma City.

HUDSON, J., SPECIALLY CONCURS:

¶1 Today's decision overruling Cripps v. State, 2016 OK CR 14, 387 P.3d 906 is long overdue. Cripps was a 3-2 decision that drew a dissent from myself and greatly divided this Court. The present case once again revisits the interplay of the Supreme Court's Fourth Amendment jurisprudence with the ability of law enforcement officers to combat the epidemic in this state of vehicular homicide cases involving intoxicated drivers using forced blood draws. We must start with the premise that the Fourth Amendment plays a critical role in safeguarding individual liberty against government action. As the Supreme Court recently observed:

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The "basic purpose of this Amendment," our cases have recognized, "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). The Founding generation crafted the Fourth Amendment as a "response to the reviled 'general warrants' and 'writs of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." Riley v. California, 573 U.S. --------, --------, 134 S. Ct. 2473, 2494, 189 L. Ed. 2d 430 (2014). In fact, as John Adams recalled, the patriot James Otis's 1761 speech condemning writs of assistance was "the first act of opposition to the arbitrary claims of Great Britain" and helped spark the Revolution itself. Id., at ____, 134 S. Ct., at 2494 (quoting 10 Works of John Adams 248 (C. Adams ed. 1856)).

Carpenter v. United States, __U.S.__, 138 S. Ct. 2206, 2213, 201 L. Ed. 2d 507 (2018).

¶2 The Fourth Amendment is a bulwark against government abuses and overreach--no matter how well-intentioned. Cripps was inconsistent with these Fourth Amendment values. Cripps undermined the well-established rule that a warrantless compulsory blood draw is unreasonable and therefore forbidden under the Fourth Amendment unless supported by both probable cause and exigent circumstances. Missouri v. McNeely, 569 U.S. 141, 152-53, 156, 133 S. Ct. 1552, 1561, 1563, 185 L. Ed. 2d 696 (2013); Winston v. Lee, 470 U.S. 753, 759, 105 S. Ct. 1611, 1616, 84 L. Ed. 2d 662 (1985); Schmerber v. California, 384 U.S. 757, 768, 770, 86 S. Ct. 1826, 1834-35, 16 L. Ed. 2d 908 (1966); State v. Shepherd, 1992 OK CR 69, ¶¶ 5-6, 840 P.2d 644, 646; Marshall v. Columbia Lea Regional Hosp., 474 F.3d 733, 741 (10th Cir. 2007). Cripps allowed law enforcement officials in this state, on the authority of Title 47 O.S.2011, § 10-104(B), to detain and draw blood from the driver of any motor vehicle involved in a vehicular accident that resulted in death or great bodily harm who could be cited for any traffic offense.

¶3 Yet "[t]o be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing." Chandler v. Miller, 520 U.S. 305, 313, 117 S. Ct. 1295, 1301, 137 L. Ed. 2d 513 (1997). Cripps instead sanctioned forced blood draws regardless of whether the facts suggested intoxication. Cripps, 2016 OK CR 14, ¶ 6, 387 P.3d at 909 ("the fact of the accident serves as probable cause."). Such a per se rule is contrary to the Supreme Court's pronouncement that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt and that the belief of guilt must be particularized with respect to the person to be searched or seized[.]" Maryland v. Pringle, 540 U.S. 366, 371, 124 S. Ct. 795, 800, 157 L. Ed. 2d 769 (2003) (internal quotation omitted) (emphasis added). The mere fact that a defendant caused a vehicular accident resulting in death or great bodily injury while committing a traffic violation, without more, does not show a fair probability that a blood test would provide evidence that same person was under the influence of alcohol or drugs at the time of the crash.

¶4 Cripps was fatally flawed in a second, more fundamental way. It wrongly viewed the seriousness of the DUI-related crimes at issue as itself creating exigency for Fourth Amendment purposes. Id., 2016 OK CR 14, ¶ 8, 387 P.3d at 909. In Mincey v. Arizona, 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), the Supreme Court rejected a categorical exception to the warrant requirement based on the existence of a possible homicide at a crime scene which, according to the State, presented an emergency situation demanding immediate action. Id., 437 U.S. at 392-94, 98 S. Ct. at 2413-14. The Mincey court "decline[d] to hold that the seriousness of the offense under investigation itself creates exigent circumstances of the kind that under the Fourth Amendment justify a warrantless search." Id., 437 U.S. at 394, 98 S. Ct. at 2414. Cripps ignored this fundamental premise of Fourth Amendment jurisprudence.

¶5 Today's decision does not mean authorities will be unable to investigate vehicular homicide cases where intoxication of one or more drivers is suspected. Police officers may conduct warrantless blood draws by obtaining consent from the driver or when supported both by probable cause and exigent circumstances. Otherwise, police officers must obtain a search warrant from a judge before drawing blood upon a showing of probable cause. The net effect of today's decision is that police officers may no longer rely upon Cripps to bypass the requirements of the Fourth Amendment. I concur both in today's decision to overrule Cripps and in the decision to affirm the judgment and sentence of the district court in this case.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1992 OK CR 69, 840 P.2d 644, STATE v. SHEPHERD
Discussed
 1994 OK CR 5, 871 P.2d 46, WILSON v. STATE
Discussed
 2002 OK CR 5, 42 P.3d 289, 73 OBJ 581, GUEST v. STATE
Discussed at Length
 2002 OK CR 17, 46 P.3d 154, STATE v. HOWERTON
Discussed
 2002 OK CR 42, 60 P.3d 1048, SANDERS v. STATE
Discussed
 2007 OK CR 2, 153 P.3d 66, HALLCY v. STATE
Discussed at Length
 2009 OK CR 10, 204 P.3d 772, BURTON v. STATE
Discussed
 2010 OK CR 22, 240 P.3d 714, STATE v. SITTINGDOWN
Discussed at Length
 2013 OK CR 4, 298 P.3d 1190, BEMO v. STATE
Discussed at Length
 2013 OK CR 12, 308 P.3d 1053, JOHNSON v. STATE
Discussed
 2014 OK CR 4, 328 P.3d 1208, STATE v. FARTHING
Discussed
 2016 OK CR 14, 387 P.3d 906, CRIPPS v. STATE
Discussed at Length
 2018 OK CR 4, 419 P.3d 257, SMITH v. STATE
Discussed
 2000 OK CR 11, 4 P.3d 702, 71 OBJ 1304, Bland v. State
Discussed
 1985 OK CR 119, 706 P.2d 915, LONG v. STATE
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 646, Aggravated Assault and Battery Defined
Cited
 21 O.S. 711, First Degree Manslaughter
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1225, Requisites of Search Warrant
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 752, Procedure for Blood Tests - Authorization - Liability for Withdrawal - Reports
Cited
 47 O.S. 10-104, Duty to Give Information and Render Aid - Drug and Alcohol Testing
Discussed at Length
 47 O.S. 753, Refusal to Submit to Test - Revocation of License - Reinstatement of License
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-402, Prohibited Acts B - Penalties
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA